UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
-----------------------------------------------------X
NATIONAL CASUALTY COMPANY,

                                    C. A. No. 04-10167-MLW

                Plaintiff,

         v.

FIRST STATE INSURANCE GROUP,

               Defendant.
-----------------------------------------------------X

### DEFENDANT FIRST STATE INSURANCE GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS NATIONAL CASUALTY COMPANY'S AMENDED PETITION TO VACATE AN ARBITRAL AWARD AND FOR OTHER RELIEF

       Defendant First State Insurance Group ("First State") submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss National Casualty Company's ("National Casualty") Amended Petition to Vacate An Arbitral Award and for Other Relief (the "Amended Petition").

### PRELIMINARY STATEMENT

       National Casualty's Amended Petition is based on the erroneous assertion that First State violated an interim pre-hearing discovery order issued by the panel. In fact the panel gave First State the choice of producing irrelevant, privileged documents (the "Privileged Documents"), or risking a negative inference in the presentation of its position at the hearing.[1] In accordance with the interim order, First State decided that the risk of waiving the privilege with respect to the documents far outweighed the adverse impact of a negative inference by the panel, and withheld the Privileged Documents. Thus, National Casualty's Amended Petition is without foundation in fact, and may be dismissed on this ground alone.

       However, even if First State's decision not to produce the Privileged Documents were considered a breach of the panel's interim award, such conduct would not entitle National

---

[1]       The arbitration clauses in the reinsurance contracts between First State and National Casualty provide for a panel of three arbitrators, one each to be chosen by the parties, and a neutral umpire to be chosen by the party-appointed arbitrators. The panel that issued the final award which the Amended Petition seeks to vacate was selected in accordance with those arbitration clauses.

Casualty to "throw over" the arbitration agreement and unilaterally declare an end to the panel's jurisdiction. National Casualty's inability to cite any authority supporting this chimerical theory illustrates its lack of merit. Simply put, an interim discovery award is not the arbitration agreement. A rule allowing a party to terminate an arbitration agreement merely because it disagrees with a panel's remedy for a purported discovery violation would render the panel's authority ephemeral and undermine the strong federal policy favoring the resolution of disputes through arbitration, to say nothing of the arbitration process itself.

Alternatively, National Casualty seeks to have the final award vacated pursuant to 9 U.S.C. § 10(a)(3) on the ground that the panel engaged in misconduct by not compelling First State to produce the Privileged Documents. This contention is without merit. The sole issue in the arbitration was whether First State properly ceded its claims to National Casualty under the terms and conditions of the reinsurance contracts. First State produced to National Casualty copies of the actual settlements and correspondence between First State and its underlying insureds, First State's policies issued to its underlying insureds, the cessions to National Casualty, and the reinsurance contracts between First State and National Casualty. National Casualty makes no claim that it did not have access to those documents; that the panel refused to consider such evidence; or that the panel precluded it from calling its own witnesses or cross-examining those of First State. Indeed, National Casualty was permitted to depose those First State witnesses it requested and present evidence in the form of witnesses and documents at the hearing. Most importantly, National Casualty does not, and indeed, cannot, allege in non-conclusory terms that the panel's refusal to compel the production of the Privileged Documents resulted in any prejudice to it. The panel's decision not to consider evidence that was cumulative at best, and certainly not discoverable if the action had been venued in this Court, is not grounds for vacating an award.

National Casualty also seeks to have the final award set aside under 9 U.S.C. § 10(a)(1), which provides that an arbitration award may be vacated where it was procured by corruption, fraud, or undue means. In this regard, National Casualty argues that "deliberately disregarding an arbitral discovery order, with the intent and/or plainly foreseeable effect of depriving National

Casualty of a fair hearing, constituted at least undue means."[2]  Again, National Casualty errs. Undue means requires a showing of intentional misconduct rising to the level of fraud or corruption. In the arbitration, the panel gave First State the choice of producing the Privileged Documents or facing a negative inference at the hearing. First State elected to risk the negative inference and explained its legitimate reasons for doing so to the panel.[3]  On more than one occasion, National Casualty articulated to the panel its objections to First State's decision. The panel considered each objection and ruled against National Casualty each time. Thus, there was ample opportunity for National Casualty to be heard and for the panel to consider the merits of its arguments. Under these circumstances, First State's decision not to produce the Privileged Documents did not amount to "undue means."

Moreover, for an award to be vacated pursuant to 9 U.S.C. § 10(a)(1), there must be a causal connection between the undue means and the award. In other words, the party challenging the award must show a nexus between the alleged misconduct and the panel's decision. The Amended Petition is entirely bereft of any factual allegation that First State's non-production caused the panel to rule in First State's favor, and therefore should be dismissed.

## FACTS[4]

The dispute between First State and National Casualty involves National Casualty's failure to honor its obligations under certain reinsurance contracts pursuant to which it agreed to reinsure First State for losses arising from various products liability, asbestos and environmental claims. The contracts provided that the settlements made by First State were unconditionally binding on National Casualty:

> All loss settlements made by the Reinsured, provided they are within the conditions of the Reinsured's original policies and within the terms of this Contract, shall be unconditionally binding upon the Reinsurer and the Reinsurer's share shall be payable at the same time and in the same manner as the Reinsured may elect to pay, upon reasonable evidence of the amount paid or to be paid being given by the Reinsured.

---

[2]  Amended Petition, at 20.
[3]  November 20, 2003 letter from Todd A. Bakal to members of the panel, annexed as Exhibit 9 to the Amended Petition.
[4]  First State accepts the Amended Petition's factual allegations as true only for the purposes of this motion.

(Fourth Casualty Excess of Loss Reinsurance Contract between National Casualty and First State, annexed as Exhibit 1 to the Amended Petition, at Article XI, ¶ 2.)[5]

First State commenced the instant arbitration against National Casualty by filing a demand for arbitration dated May 9, 2002. The reinsurance contracts require that any dispute between the parties be arbitrated, and provide that the arbitrators are not obliged to follow strict rules of law:

> If any dispute shall arise between the Reinsured and the Reinsurer, either before or after the termination of this Contract, with reference to the interpretation of this Contract or the rights of either party with respect to any transaction under this Contract, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. . . . The arbitrators shall consider this Contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of arbitrators shall be final and binding on both the Reinsured and the Reinsurer.

(Fourth, Second and Third Casualty Excess of Loss reinsurance contracts, annexed to the Amended Petition respectively as Exhibits 1, 2 and 3, at Article XVI, ¶ 1.)

During the course of the arbitration, the parties engaged in discovery, including document production and depositions. Among the documents that First State declined to produce were the Privileged Documents, i.e., documents comprising privileged communications between First State and its counsel, and attorney work-product. With respect to the Privileged Documents, First State provided to National Casualty and the panel a privilege log identifying and describing the withheld documents. First State was reluctant to produce the Privileged Documents in view of certain case law holding that an insurer's disclosure of privileged materials to its reinsurers might result in a waiver of the privilege as respects third parties, such as First State's policyholders. Given the huge financial exposure and the ongoing nature of the underlying coverage actions, First State decided that the risk of future adverse rulings on disclosure of

---

[5]    The Second and Third Casualty Excess of Loss contracts between First State and National Casualty, annexed as Exhibits 2 and 3 respectively to the Amended Petition, have similar provisions concerning loss settlements. The only difference is that the phrase "within the conditions of the Reinsured's original policies" is omitted from Article XI, paragraph 2 of the Second and Third Casualty Excess of Loss contracts. National Casualty's assertion that all three reinsurance contracts at issue contain identical loss settlement provisions (Amended Petition, at 9) is erroneous.

privileged documents was unacceptable.

National Casualty advised the panel that it disagreed with First State's claim of privilege. (October 24, 2003 letter from Mark C. Kareken to members of the panel, annexed as Exhibit 6 to the Amended Petition.) Specifically, National Casualty argued that neither the attorney-client privilege nor the attorney work-product doctrine could be invoked by First State "because the reasons for the protections do not apply to National Casualty." (Id. at 2.) In response, First State submitted to the panel a brief setting forth the reasons why the attorney-client privilege and the attorney work-product doctrine entitled it to withhold the Privileged Documents, and why disclosure of those materials could result in a waiver of the privilege and work-product doctrine. (First State's Brief in Opposition to National Casualty's Request for Production of Privileged Documents, annexed as Exhibit 7 to the Amended Petition.)

By letter dated November 15, 2003, the panel directed that First State produce the Privileged Documents by November 20, 2003 or face the possibility of a negative inference:

> The Panel has reviewed and considered the recent correspondence from counsel regarding the issues presented by the discovery of certain documents listed in Petitioner First State's Privilege Log. With respect to these documents and other issues, the Panel issues the following Order (Mr. Gentry respectfully dissents noting the cases which hold that reinsurers do not have a common interest in the privileged documents):

> 1.    Because of their common interest in the resolution of claims made under the treaties in dispute, the Panel orders First State to produce any documents requested by Respondent National Casualty that relate to the handling of the underlying claims and related litigation at issue in this arbitration. The Panel believes that such production will not waive any such privilege claimed against third parties. These documents should be produced by November 20, 2003.

> In the event the requested documents are not produced, the Panel will, by necessity, be required to draw whatever negative inferences the Panel deems appropriate in the presentation of First State's position in this matter.

(November 15, 2003 interim award, annexed as Exhibit 8 to the Amended Petition.)

Determining that "the risk of disclosure of privileged documents . . . far outweighs any

risks inherent in the Panel drawing a negative inference in the presentation of First State's position in this matter[,]" First State advised the panel that it would not produce the Privileged Documents. (November 20, 2003 letter from Todd A. Bakal to members of the panel, Amended Petition, Ex. 9.) National Casualty objected, and in a letter dated November 21, 2003, requested that "the Panel issue an order fully staying this arbitration so that National Casualty can prepare and submit a motion that details the Panel's options and the relief National Casualty considers appropriate." (November 21, 2003 letter from Mark C. Kareken to members of the panel, annexed as Exhibit 10 to the Amended Petition.) On December 5, 2003, the panel ruled that the arbitration hearing would not be postponed, and the consequences of First State's non-production would be deferred until the arbitration hearing, scheduled for February 10, 2004. (December 5, 2003 interim award, annexed as Exhibit 11 to the Amended Petition.)

Dissatisfied with the panel's refusal to postpone the hearing, National Casualty again raised the issue in a pre-hearing arbitration brief arguing that First State's non-production constituted a breach of the arbitration agreement and entitled it to terminate the arbitration. (National Casualty's Pre-hearing Reply Brief, excerpts annexed as Exhibit 12 to the Amended Petition.) The panel disagreed, and the arbitration hearing commenced as scheduled on February 10, 2004. It concluded three days later on February 13, 2004.

Even before the arbitration hearing began, National Casualty filed a petition in this Court seeking, inter alia, (a) a declaration that it was entitled to terminate the arbitration agreements set forth in the reinsurance contracts; (b) a declaration that the effect of such termination was to end the panel's jurisdiction; and (c) an order vacating the December 5, 2003 interim award pursuant to 9 U.S.C. § 10, and enjoining further arbitral proceedings. The Petition, which did not seek any expedited relief or to preliminarily enjoin the panel from holding the hearing, was rendered moot upon the commencement of that hearing. As set forth in First State's pending motion for sanctions (which is also before the Court), the Petition was legally groundless because it sought to vacate an interim arbitration award concerning a purely procedural issue. It was also sanctionable conduct in that the filing was purposely timed to require a substantive response during the arbitration hearing in a flagrant effort to cause First State to divert its resources.

6

On March 12, 2004, the panel issued its final award (the "Final Award"). Although the panel ruled in favor of First State, <u>it expressed its disappointment "in the strength of the positions taken by National Casualty and First State's policy regarding the production of privileged documents[,]" by concluding that each party should bear its own fees and expenses.</u> (Final Award, annexed as Exhibit 13 to the Amended Petition.) National Casualty unconditionally paid less than the amount it owed pursuant to the award, and First State has accepted such payment.

On April 1, 2004, in a calculated attempt to avoid Rule 11 sanctions, National Casualty moved for leave to amend the Petition, and by order dated August 30, 2004, the Court granted the motion. First State now moves to dismiss the Amended Petition, which seeks, in addition to the <u>vacatur</u> of the Final Award, a declaration that "as a necessary consequence of First State's disregard of the arbitration panel's discovery order (a) National Casualty became entitled to terminate the arbitration agreement, and that (b) the effect of such termination was to end the arbitration panel's jurisdiction." The Amended Petition also requests that the Court set "this matter down for a hearing to assess National Casualty's damages[.]"

**ARGUMENT**

**POINT I**

**FIRST STATE'S DECISION TO WITHHOLD PRIVILEGED DOCUMENTS DOES NOT ENTITLE NATIONAL CASUALTY TO "THROW OVER" THE ARBITRATION AGREEMENT, AND DECLARE AN END TO THE PANEL'S JURISDICTION**

National Casualty contends that by not producing the Privileged Documents, First State breached an interim arbitration award, which in turn constituted a breach of the arbitration agreement, which in turn entitled National Casualty to "throw over" that agreement and unilaterally declare the panel's jurisdiction at an end. (Amended Petition, at 11-16.) This tortured argument is both factually and legally groundless for a number of reasons.

A.    <u>There Are No Grounds For "Throwing Over" The Arbitration Agreements</u>

First, First State acted pursuant to the November 15, 2003 award by choosing to risk the possibility that the panel would draw a negative inference from the non-production of the

7

Privileged Documents, rather than produce those documents. (November 15, 2003 interim award, Amended Petition Ex. 8.) Thus, instead of risking a waiver of the privilege with respect to third parties, First State made the principled decision not to produce the Privileged Documents. (November 20, 2003 letter from Todd A. Bakal, Amended Petition Ex. 9.) First State explained its reasoning to the panel. After considering National Casualty's objections, the panel saw no need to compel the production of the Privileged Documents, or postpone the hearing to allow further argument on the subject. (Id.; December 5, 2003 interim award, Amended Petition Ex. 11.)[6] Thus, the Amended Petition, which seeks vacatur of the Final Award based on First State's purported violation of the November 15, 2003 interim award, has no foundation in fact.

Second, even if First State's non-production had violated the November 15, 2003 interim award, under no circumstances would such a violation constitute a breach of the arbitration agreement. First State's decision not to produce the Privileged Documents is an entirely separate matter from its compliance with the terms of the reinsurance contracts' arbitration clauses. The panel's interim award is not the arbitration agreement. Indeed, National Casualty has cited no cases to support the fanciful notion that "First State's willful disregard of the arbitration panel's order compelling First State to produce the withheld documents constituted a material breach of the arbitration agreement." (Amended Petition, at 13.) Having fully performed its obligations under the arbitration clauses (and, indeed, under the reinsurance contracts themselves), First State cannot be considered to have breached those clauses, regardless of whether it complied with an interim award of the panel.

Ironically, National Casualty relies on PaineWebber, Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir. 1996), in which the First Circuit held that when the parties agree to arbitration, they are

---

[6]     In the final award, the panel addressed National Casualty's claims by declining to award First State its fees and expenses.

presumptively deemed to have made "a commitment to have an arbitrator decide all the remaining issues necessary to reach a decision on the merits of the dispute." It is National Casualty, however, not First State, that is attempting to avoid its commitment to have the arbitrators decide all the issues because the Amended Petition essentially seeks to overturn the panel's December 5, 2003 interim decision not to postpone the hearing or compel the production of the Privileged Documents.[7] The Court should not allow it to do so. Having previously committed to have the panel decide all the issues necessary to reach a decision on the merits of the dispute, including discovery issues, National Casualty is bound by the panel's determination to proceed with the hearing without considering the Privileged Documents.

Other cases cited by National Casualty, i.e., Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8 (1st Cir. 2000), and Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 797 N.E.2d 415 (2003), also do not support the spurious claim that non-compliance with an arbitrator's discovery order breaches the arbitration agreement. Rather, as National Casualty itself concedes, these cases stand for the limited, and unremarkable, proposition that one party's material breach of a contract excuses the other party from further performance of that contract. Ross-Simons, 217 F.3d at 11, Prozinski, 59 Mass. App. Ct. at 610, 797 N.E.2d at 424. As discussed above, First State has not breached the arbitration clause set forth in the reinsurance contracts because it has complied with its obligations thereunder. National Casualty should therefore be prohibited from using First State's decision to follow the panel's interim ruling permitting First State not to produce the Privileged Documents subject to the risk of a negative inference, as an excuse for cavalierly "throwing over" the arbitration agreement. (Amended Petition at 16.)

---

[7]    National Casualty's original Petition sought to vacate the December 5, 2003 interim arbitration award. As explained in First State's pending motion for sanctions, the Petition was frivolous because, among other reasons, this Court has no jurisdiction to vacate an interim award, and in any event, may not resolve a discovery dispute arising in arbitration. The Amended Petition, which seeks to vacate the Final Award, is little more than an attempt to avoid sanctions.

National Casualty's contention that First State's non-compliance with the November 15, 2003 Order entitles it "to end the arbitration at issue, with prejudice" (Amended Petition, at 16), is not only legally erroneous, but also contravenes the strong federal policy favoring arbitration. Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 730 (1st Cir. 1994), aff'd, 515 U.S. 528, 115 S. Ct. 2322 (1995); Williams v. HealthAlliance Hosps., Inc., 158 F. Supp. 2d 156, 159 (D. Mass. 2001). Under National Casualty's analysis, a party to an arbitration would be able to end the arbitration any time it disagreed with its adversary's response to an order of the panel. Again, National Casualty does not and, indeed, cannot cite any case law to support this fallacious theory.

B.    The Panel Properly Exercised Its Broad Discretion
      In Fashioning A Remedy It Deemed Was Appropriate

It is also significant to note that the arbitration clauses in the reinsurance contracts expressly relieve the panel from "judicial formalities," and excuse it from following strict rules of law. Thus, the arbitration agreement at issue confers broad discretion upon the panel, and not National Casualty, to fashion an appropriate remedy for First State's decision not to produce the Privileged Documents. Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 261 (2d Cir. 2003) ("The arbitration clause . . . at issue provided that '[t]he arbitrators shall consider this Treaty an honourable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law.' Courts have read such clauses generously, consistently finding that arbitrators have wide discretion to order remedies they deem appropriate.") (emphasis in original). Having agreed to a clause conferring wide latitude upon the arbitrators, National Casualty cannot now be heard to complain that the panel did not react to First State's non-production as National Casualty wishes it had.

In any event, it is not the role of the courts to second-guess an arbitrator's ruling on a purely procedural discovery issue. E.g., Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 592 (2002) ("Thus, 'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but for an arbitrator, to decide. So,

too, the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'") (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909 (1964) (emphasis in original); PaineWebber, 87 F. 3d at 599. By seeking the vacatur of the Final Award based on the panel's resolution of the dispute concerning the Privileged Documents, National Casualty is impermissibly attempting to involve the Court in a procedural question over which it has no jurisdiction. See, e.g., Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 791, 321 F.3d 251 (1st Cir. 2003).

Contrary to National Casualty's claim, First State's decision to accept the negative inference and not produce the Privileged Documents, which as discussed in Point II.A, infra, are irrelevant, did not undermine the integrity of the proceeding or render it unfair or partial. In one case cited by National Casualty, Hooters of Am. v. Phillips, 173 F.3d 933 (4th Cir. 1999), the Court affirmed the district court's denial of a motion to compel arbitration by Hooters, which had "set up a dispute resolution process utterly lacking in the rudiments of even-handedness[.]" Hooters, 173 F.3d at 935. The Court concluded that Hooters had breached the arbitration agreement with its employee because it had promulgated "rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." Id. at 938. Here, First State and National Casualty negotiated the rules governing the instant arbitration, and National Casualty does not argue that the procedures in place were unfair. Thus, there has been no "wholesale relinquishment of the right to orderly and fair disposition of disputes." (Petition at 12.)

In Hoteles Condado Beach, La Concha and Convention Ctr. v. Union de Tronquistas Local 901, 763 F.2d 34 (1st Cir. 1985), another case cited by National Casualty, the First Circuit affirmed the district court's vacatur of an arbitration award where the arbitrator refused to give weight to the transcript of a criminal trial, which was the only record of testimony by a party's sole witness. This is not the case in the arbitration between National Casualty and First State, where the panel heard testimony and cross-examination of all of the parties' witnesses. Under no circumstances could the instant arbitration be considered unfair or partial because there was no indication that the Panel refused to consider relevant evidence presented by National Casualty,

and Hoteles Condado Beach is inapposite.[8]

By citing the 1920 decision of the North Carolina Supreme Court in Wynne v. Greenleaf Johnson Lumber Co., 179 N.C. 320, 102 S.E. 403 (1920), National Casualty apparently equates First State's non-production of the Privileged Documents with sabotaging an adversary's case by getting its witness drunk. While plying an opponent's witness with whiskey might fairly be said to constitute "unfair or fraudulent means to affect the award," the same cannot be said of a party's decision not to produce irrelevant, privileged documents. This is especially true where, as here, First State advised the panel of its decision and its reasons therefore, and the panel ordered the hearing to proceed without compelling the production of the Privileged Documents. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros, 1 F. Supp. 2d 1337, 1346 (M.D. Fla. 1998) (denying motion to vacate arbitration award, stating that "Defendant has failed to show (with clear and convincing evidence) that Plaintiffs fraudulently withheld or redacted any document without first obtaining the panel's approval.")

Accordingly, the Amended Petition should be dismissed.

## POINT II

### NATIONAL CASUALTY HAS NOT SET FORTH ANY GROUNDS FOR VACATING THE FINAL AWARD UNDER THE FEDERAL ARBITRATION ACT

National Casualty also seeks an order vacating the Final Award pursuant to sections 10(a)(3) and 10(a)(1) of the Federal Arbitration Act. (Amended Petition, at 17-20.)  Under section 10(a)(3), an award may be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence

---

[8]   Another case cited by National Casualty, New York Times Co. v. Newspaper and Mail Deliverers Union of New York and Vicinity, 740 F. Supp. 240 (S.D.N.Y. 1990), is also inapposite.  That case involved contempt of an order by the district court in a labor dispute.  First Preservation Capital, Inc. v. Smith Barney, Harris Upham & Co., 939 F. Supp. 1559 (S.D. Fla. 1996), also cited by National Casualty, actually supports First State's position that courts should defer to arbitrators on questions of arbitration of procedure:

> From the case law, it appears that arbitrators have considerably more discretion over rules and procedures than do federal courts.  Plaintiffs here are requesting the Court to impose procedural dictates on the Panel, which Forsythe makes clear is inappropriate.  This is a case in which the procedural questions affecting final disposition of the matter should be left to the Panel.

Id. at 1565 (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S. Ct. 909 (1964); Forsythe Int'l S.A. v. Gibbs Oil Co. of Texas, 915 F.2d 1017 (5th Cir. 1990)).

pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10 (a)(3). Section 10(a)(1) provides that an award may be vacated "where the award was procured by corruption, fraud or undue means." 9 U.S.C. § 10 (a)(1).

With respect to section 10(a)(3), National Casualty claims that the "Panel's order compelling National Casualty to proceed with the arbitration while deprived of full and fair access to key evidence was fundamentally unfair and requires vacatur of its award." (Petition at 17.)  In fact, the arbitration was not fundamentally unfair because the Privileged Documents were irrelevant, and would not, in any event, be discoverable if the dispute between First State and National Casualty had been litigated in court.  Thus, the panel's deferral of its ruling until the hearing did not constitute misconduct.

A.    The Privileged Documents Were Irrelevant

The arbitration boiled down to whether National Casualty was obligated to reimburse First State for the settlements it made on claims ceded to the reinsurance contracts.  Thus, the dispute is one of contract interpretation: i.e., whether First State settled and ceded the claims in accordance with the terms of the underlying policies and the reinsurance contracts.  The only relevant documents, therefore, were the underlying policies, the reinsurance contracts and documents that show how First State actually settled and ceded the claims.  Indeed, the reinsurance contracts themselves provide that the only documents relevant to a determination of National Casualty's obligations to First State are the underlying policies, the reinsurance contracts and agreements settling the underlying claims:

> All loss settlements made by the Reinsured, provided they are within the conditions of the Reinsured's original policies and within the terms of this Contract, shall be unconditionally binding upon the Reinsurer and the Reinsurer's share shall be payable at the same time and in the same manner as the Reinsured may elect to pay, upon reasonable evidence of the amount paid or to be paid being given by the Reinsured.

(Fourth Casualty Excess of Loss Reinsurance Contract between National Casualty and First State, annexed as Exhibit 1 to the Amended Petition, at Article XI, ¶ 2 (emphasis supplied).) Opinions of First State's counsel about how they believed the claims should be handled, or their analysis of the settlements are simply not pertinent in this contract dispute as long as National Casualty is provided with the evidence of what First State actually did.

The cases cited by National Casualty, Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of Am., 285 F. Supp. 2d 200 (D. Conn. 2003), and Commercial Union Ins. Co. v. Swiss Reins. Am. Corp., No. Civ. A. 00-12267-DPW, 2003 WL 1786863 (D. Mass. Mar. 31, 2003), are inapposite.   In Travelers, the reinsured contended that the only issue before the court was whether the "settlement of the number of occurrences issue with OCF and subsequent allocation of the payments under that settlement on a one-occurrence basis was reasonable under the circumstances." Travelers, 285 F. Supp. 2d at 208 (emphasis in original).  Because the reinsured presented the issue in this manner, documents concerning the basis of settlement negotiations with the underlying insured were relevant.  Id. at 209.  In the dispute between First State and National Casualty, First State argued that its practice of settling and ceding claims on a single occurrence basis was proper under the terms of both the underlying policies and the reinsurance contracts.  Thus, documents that were relevant in Travelers, which in any event *did not* include privileged documents, but rather "an internal Travelers memorandum," are not relevant in the present matter.

In Commercial Union, the reinsured sought reimbursement from its reinsurer for a settlement with the insured, the dollar value of which was in excess of the limits expressly set forth in the reinsurance certificates.  Commercial Union, 2003 WL 1786863 at *7.  In ruling on cross motions for summary judgment, the court considered "the discussions among [the reinsured] and its attorneys over the question whether New York courts would interpret the [reinsured's] umbrella policies as providing annualized limits."  Id. at *3.  Although the case

14

does not discuss how documents memorializing those discussions were produced, it is reasonable to infer from the facts that the reinsured voluntarily produced those documents to explain the structure of the settlement it reached with its insured. Certainly, there was no indication of any dispute involving the production of the documents, or that the Court ordered that they be turned over.

In any event, in denying the reinsured's motion and granting the reinsurer's motion, the court held that "the clear language of the [reinsurance] Certificates does not permit the imposition of annualized limits on [the reinsurer] in excess of the stated per occurrence and aggregate limits." Id. at *10. Thus, the court ultimately concluded that the documents memorializing discussions between the reinsured and its attorneys were not relevant to the outcome of the case.

Here, because the Privileged Documents were not relevant to the dispute between First State and National Casualty, National Casualty is not entitled to obtain a vacatur of the Final Award on the ground that it was denied full and fair access to "key" evidence. It bears repeating that National Casualty had access to, and the ability to present at the hearing, all the documents that had any relevance to the arbitration, i.e., First State's policies with its insureds, the reinsurance contracts, and materials showing how First State actually settled and ceded the claims. Thus, the panel's decision not to compel the production of the Privileged Documents did not deprive National Casualty of a fair hearing.

B.    The Panel Did Not Engage In Misconduct

National Casualty argues that the Final Award should be set aside because the panel engaged in misconduct by failing to ensure that it had full and fair access to the Privileged Documents prior to the hearing. (Amended Petition, at 17-20.) In fact, the panel did not engage in misconduct for the simple reason that, as set forth in Point II.A., supra, the Privileged Documents were not pertinent or material to the proceeding. Moreover, the panel declined to

15

compel their production, only after allowing fair opportunity for National Casualty to be heard and considering its arguments on this issue. (November 21, 2003 letter from Mark C. Kareken to members of the panel, Amended Petition Ex. 10.)  Under such circumstances, National Casualty's cries of fundamental unfairness ring hollow. Areca, Inc. v. Oppenheimer & Co., Inc., 960 F. Supp. 52, 55 (S.D.N.Y. 1997) (finding no fundamental unfairness in an arbitration in which the panel declined to hear the testimony of witness after considering petitioner's arguments concerning the necessity of such testimony).

Even if the Privileged Documents were relevant, however, the panel's refusal to compel First State to produce them did not amount to misconduct requiring a vacatur of the Final Award. A "'federal court may vacate an arbitrator's award under [9 U.S.C. § 10(a)(3)] only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties and denies them a fair hearing.'" Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros, 1 F. Supp. 2d 1337, 1343 (M.D. Fla. 1998) (quoting Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992)). That the hearing was fundamentally fair despite National Casualty's inability to present to as evidence the 757 Privileged Documents is established by its failure to articulate in non-conclusory language precisely what prejudice it purportedly suffered.  Rather, National Casualty asserts that it was "inherently prejudiced:"

> Here, it is clear that National Casualty's right to have an adequate opportunity to present its case and arguments to the Panel was inherently prejudiced by First State's willful refusal to comply with the Panel's order that it produce the 757 documents.

(Amended Petition, at 18 (emphasis supplied).)

Even a case cited by National Casualty, Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S.A., 300 F. Supp. 179 (S.D.N.Y. 1969), establishes that such conclusory allegations are insufficient to vacate an arbitration award:

> [Petitioner's moving papers] contain[] allegations of prejudice which are either distressingly conclusory or indicative of comparatively minor inconvenience to

16

counsel. . . . [T]here is nothing in the record which would permit a finding that undisclosed parts of the logs contained information which would have been helpful to Chevron in its submission to the panel.

Id. at 181-82 (denying motion to vacate maritime arbitration award) (emphasis supplied).

The Amended Petition contains no specific, factual allegations from which it can be inferred that the Privileged Documents would have been helpful to National Casualty in its submission to the panel. That First State may have requested of its own reinsureds to view "counsel files" in an unrelated matter subject to different contracts (Amended Petition, at 8), is as insignificant as the production of such files in other reinsurance disputes between different parties. See Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of Am., 285 F. Supp. 2d 200 (D. Conn. 2003); Commercial Union Ins. Co. v. Swiss Reins. Am. Corp., No. Civ. A. 00-12267-DPW, 2003 WL 1786863 (D. Mass. Mar. 31, 2003) What is significant is that *in this matter*, National Casualty has failed to articulate with the requisite specificity the reason why its inability to present the Privileged Documents resulted in prejudice. Areca, Inc, 960 F. Supp. at 55 ( denying motion to vacate, where "petitioners repeatedly failed to articulate what important testimony could be elicited from Fernandez . . . .").

At bottom, the Amended Petition grossly misconstrues the nature of a fundamentally fair hearing, which "requires that the parties be permitted to present evidence and cross-examine adverse witnesses." GFI Sec. LLC v. Labandiera, No. 01 CIV. 00793, 2002 WL 460059, at *7 S.D.N.Y. Mar. 26, 2002). See also Marshall & Co., Inc. v. Duke, 941 F. Supp. 1207, 1211 (N.D. Ga. 1995) ("Moreover, an 'arbitrator is not bound to hear all the evidence tendered by the parties; he need only give each party the opportunity to present its arguments and evidence.'") (quoting Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992)). Tellingly, National Casualty makes no claim that it was prohibited from presenting evidence or cross-examining First State's witness. Rather, it complains that it was not able to "conduct the hearing itself without the benefit of the 757 relevant documents[.]"  (Amended Petition, at 20.)  Having agreed to

17

arbitration as the method for resolving its disputes with First State, however, National Casualty had no right to present every piece of evidence that it considered to be relevant. GFI Sec. LLC, 2002 WL 460059, at *7 (holding that arbitrators "need not compromise the speed and efficiency that are the goals of arbitration by allowing the parties to present *every piece* of relevant evidence.") (quoting Areca, Inc., 960 F. Supp. at 55 (emphasis in original).

Nor did the panel's decision to hold National Casualty to the deposition and hearing dates originally scheduled constitute misconduct. Schmidt v. Finberg, 942 F.2d 1571 (11th Cir. 1991) (affirming denial of motion to vacate arbitration award, holding that panel's denial of request to postpone hearing to allow testimony of witness did not prejudice party's rights). National Casualty's disappointment that it lost the arbitration and was ordered to make payment to First State on every submitted claim is understandable. It is not, however, grounds for vacating a Final Award that was rendered after a fundamentally fair hearing at which National Casualty presented evidence and cross-examined First State's witness.[9]

C.    The Award Was Not Procured By Undue Means

National Casualty also seeks vacatur of the award pursuant to 9 U.S.C. § 10(a)(1), on the ground that it was procured by undue means. (Amended Petition, at 20.) In this regard, National Casualty contends in conclusory language that "deliberately disregarding an arbitral discovery order, with the intent and/or plainly foreseeable effect of depriving National Casualty of a fair hearing, constituted at least undue means." (Id.) This claim has no merit, however, as undue means requires proof of intentional misconduct rising to the level of fraud or corruption. Painewebber Group., Inc. v. Zinsmeyer Trusts P'ship., 187 F.3d 988, 991 (8th Cir. 1999). Here, the panel did not compel the production of the Privileged Documents after hearing National

---

[9]    National Casualty's citation of Home Indem. Co. v. Affiliated Food Distribs., Inc., No. 96 Civ. 9707 (RO), 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) to support its claim of prejudice is misplaced. In that case, the arbitration panel issued an interim award that "specifically 'condition[ed]' Affiliated's discovery on its posting of security" in the amount of $472,627.62. Home Indem. Co., 1997 WL 773712, at *2 Nothing of the kind occurred in the arbitration between First State and National Casualty, and National Casualty had access to all of First State's relevant, non-privileged documents. Thus, Home is inapposite.

18

Casualty's arguments. As the Amended Petition alleges no facts from which it can be inferred that First State intentionally abused the process for asserting claims of privilege, the motion to vacate pursuant to 9 U.S.C. § 10(a)(1) should be denied. Id. at 993.

Moreover, National Casualty has failed to allege, as it must, a causal relation between the purported undue means and the arbitration award. Id. at 994. See also A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 1992) ("Thus the statute requires a showing that the undue means caused the award to be given."); Mantle v. Upper Deck Co., 956 F. Supp. 719, 732 (N.D. Tex. 1997). Thus, the Amended Petition should be dismissed.

## CONCLUSION

For the foregoing reasons, the Amended Petition should be dismissed in its entirety.

First State Insurance Group
By its attorneys,

Mitchell S. King, Esq. (BBO#2728107)
Thomas M. Elcock, Esq. (BBO #548027)
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, Massachusetts 02109
(617) 456-8000

Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004
(212) 804-4200

Dated: October 8, 2004

## CERTIFICATE OF SERVICE

I, Thomas M. Elcock, hereby certify that on October 8, 2004, I served First State Insurance Group's Memorandum of Law In Support of Its Motion to Dismiss National Casualty Company's Petition to Vacate Arbitral Order and Enjoin Further Arbitral Proceedings, Or, in the Alternative, Remand, by causing copies to be delivered via facsimile, hand delivery and first class mail, postage prepaid, to counsel of record for all parties.

Thomas M. Elcock