UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL CASUALTY COMPANY,<br>        Petitioner | )<br>)<br>) |
| v. | ) CIVIL ACTION NO: 04-10167MLW<br>)<br>) |
| FIRST STATE INSURANCE GROUP,<br>        Respondent | )<br>) |

**PETITIONER'S OPPOSITION TO RESPONDENT'S
MOTION TO DISMISS AMENDED PETITION**

**INTRODUCTION**

This case presents a significant issue implicating the integrity of binding arbitration as an effective and fair alternative dispute resolution system: whether a party remains bound by an arbitration agreement after the other party has willfully refused to comply with an arbitral order requiring the production of evidence directly related to the subject of a dispute.

National Casualty and the Respondent, First State Insurance Group ("First State") are, respectively, the reinsurer and the cedent under three reinsurance contracts (also referred to as treaties), each containing an arbitration clause. In the course of an arbitration of a dispute over certain losses for which First State sought reinsurance payments from National Casualty, the arbitration panel ("the Panel") granted National Casualty's request for an order compelling First State to produce over seven hundred documents relating to First State's handling of the claims resulting in the losses at issue. Without seeking reconsideration or reversal of the Panel's order, First State simply

declined to comply with that order. Nonetheless, over National Casualty's objections, the Panel ordered National Casualty to complete its deposition discovery and present its defense at a hearing on the merits without any of the documents withheld by First State, following which the Panel issued an award largely in First State's favor.

National Casualty argued to the Panel,[1] and now contends in its Petition to this Court, that by willfully refusing to comply with the Panel's order, First State materially breached the very essence of the parties' agreement to arbitrate, thereby entitling National Casualty to terminate the arbitration agreement and thus end the Panel's jurisdiction before the hearing. In the alternative, National Casualty submits that an award rendered after First State deliberately deprived National Casualty and the Panel of a substantial body of evidence is a product of undue means and a fundamentally unfair hearing. Therefore, the award should be vacated under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10(a)(1) and (3).

First State has responded to National Casualty's Amended Petition with a motion it labels a "motion to dismiss," implying that it is proceeding under F. R. Civ. P. 12(b)(6). In fact, however, the motion does not fit, much less meet the standard for, any known category of a Rule 12 motion, and certainly fails to show either that National Casualty's Amended Petition fails to state a cognizable claim for relief or that First State is entitled to judgment in its favor as a matter of undisputed evidence and the applicable law. For the reasons extensively set out in the Amended Petition itself and further discussed below, each of the three theories asserted in the Petition states a valid cause to vacate the Panel's award and First State's attack on their sufficiency fails both factually and legally.

---

[1] Pre-hearing Reply Brief of National Casualty Company, Exh. 12 to the Amended Petition.

Therefore, First State's motion should be denied and the case should proceed to a scheduling conference to plan pre-trial discovery and an evidentiary hearing on the merits.

## ARGUMENT

### I. Standard for Considering First State's Motion

First State offers no standard under which the Court should consider its motion, and it is in fact impossible to articulate the appropriate standard because the motion is a legally incoherent and improper procedural mishmash. On the one hand, in an early footnote of its supporting memorandum, First State purports to accept the factual allegations of National Casualty's Amended Petition,[2] thereby seeming to present its motion as an ordinary motion to dismiss and subject to the principle that "in considering a motion to dismiss, a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993). Yet, on the same page, in its Preliminary Statement, and then throughout its motion, First State quarrels with National Casualty's allegations, proffers an alternative set based solely on argument of counsel, and ends up urging that the Amended Petition be dismissed because it is "without foundation in fact."[3]

While that position has the ring of a Rule 12 (b)(6) variant of a motion for summary judgment, the motion does not fit that category either, because it does not present any matters outside National Casualty's pleading to support First State's counter-allegations. Most notably, with respect to a factual issue that is key to much of First

---

[2] See Defendant First State Insurance Group's Memorandum of Law In Support of its Motion to Dismiss National Casualty Company's Amended Petition to Vacate An Arbitral Award and For Other Relief (First State's Memorandum"), p. 3, fn. 4.

[3] First State's Memorandum, p. 1.

3

State's legal argument, whether the documents it withheld in defiance of the Panel's order were irrelevant and privileged, First State simply – and, as will be shown below, impermissibly – asks the Court to accept its counsel's characterization without offering the Court, which, after all, does not have the documents before it, a single shred of evidence in support.

Thus, First State's motion takes neither of the recognized routes to summary judgment: it does not undertake to affirmatively demonstrate the absence of a dispute as to the nature of the documents, nor, given that National Casualty has had no opportunity to conduct discovery, is First State in the position to demonstrate that National Casualty could not make out its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 331-332(1986) (an attempt to demonstrate absence of support for nonmoving party's position on a factual issue can be made only after an adequate opportunity to conduct discovery and, indeed, the moving party must use results of discovery to discharge its initial burden); *First Chicago Int'l v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988); *Frere v. Orthofix, Inc.*, 2000 WL 1789641 (S.D.N.Y.) (recognizing the availability of and discussing the standard for discovery in judicial proceedings to confirm or vacate an arbitral award) (unpublished decision).

In sum, First State's purported motion to dismiss should be denied because it is an anomalous procedural invention inconsistent with any conceivably relevant rule of federal procedure, incapable of being considered under any cognizable procedural standard, and designed only to avoid the Court's consideration of the Amended Petition on the merits.

## II. First State's Version of the Facts Contradicts the Actual Record and Is Precluded by the Arbitration Panel's Rulings

First State's motion not only takes issue with National Casualty's allegations but, in complete disregard for the arbitral rulings that are before this Court as exhibits to National Casualty's Amended Petition, improperly seeks to relitigate issues as to which the Panel had made conclusive *and* preclusive rulings.

The focus of National Casualty's Amended Petition is the following order of the Panel:

> Because of their common interest in the resolution of claims made under the treaties in dispute, the Panel *orders* First State to produce any documents requested by Respondent National Casualty that *relate* to the handling of the underlying claims and related litigation *at issue* in this arbitration. The Panel believes that such production *will not waive* any such privilege claimed against third parties. *These documents should produced by November 20, 2003.*
>
> In the event the requested documents are not produced, the Panel will, by necessity, be required to draw whatever negative inferences the Panel deems appropriate in the presentation of First State's position in this matter.[4]

In an effort to defeat National Casualty's Amended Petition and to justify its response to the Panel's order, First State has recharacterized the basic facts until they are, essentially, unrecognizable. Specifically, underlying each of First State's arguments in support of its motion to dismiss is the following assertion: because the Panel's order "gave First State *the choice* of producing *irrelevant*, *privileged* documents … or risking a negative inference in the presentation of its position at the hearing," and First State "decided to *follow* the panel's interim ruling *permitting* First State not to produce the

---

[4] Exhibit 8 to the Amended Petition. (Italics added for emphasis.)

Privileged Documents subject to the risk of a negative inference," its failure to produce the documents did not violate the order.[5]

This naked "spin" is implausible on its face -- if the documents were truly irrelevant and privileged, why would the Panel have ordered that First State should produce them -- and utterly at odds with the actual record. Contrary to First State's euphemistic characterization of its conduct, the Panel's characterization, using plain and direct English, described First State's conduct as "First State's *refusal to comply* with the Panel's order to produce the documents."[6]

Nor can the Panel's mention of a sanction in the event First State failed to produce the documents as ordered fairly be read as an offer of "a choice." First State's description of its "risk-benefit analysis" in the wake of the Panel's order[7] treats the Panel's order as inviting First State to make an informed choice between two equally legitimate options: to comply or not to comply. By that logic, a highway authority's sign "Littering is punishable by a fine" merely offers motorists a choice between littering and not littering, so long as they take into account and are prepared to pay the fine. That logic is obviously preposterous. Warnings of penalties for non-compliance with stated requirements are designed to encourage compliance by those for whom a simple statement of the requirement is not enough. Unfortunately, in this case, neither the Panel's order to First State, nor its warning of a sanction for non-compliance, had the obviously intended effect. That their sole effect was to cause First State to calculate

---

[5] First State's Memorandum, pp. 1, 9. (Italics added for emphasis.)

[6] Exhibit 11 to the Amended Petition. (Italics added for emphasis.)

[7] First State's Memorandum, pp. 3, 5, 7.

whether it could live with the threatened sanction provides no justification for its disobedience and, indeed, serves only to crystallize that it was deliberate and willful.

Nor did the Panel's order leave First State free to persist in its contention that the documents it refused to produce despite the Panel order were irrelevant and privileged or that their production could be deemed a waiver of the privilege. To the contrary, the Panel rejected First State's argument that the documents were "irrelevant." Although in its Privilege Log, First State had invoked only the attorney-client/work product privileges as grounds for withholding the documents at issue,[8] in its opposition to National Casualty's request that the Panel compel their production, First State also argued that the withheld documents were irrelevant.[9] The Panel squarely rejected this contention, ordering First State to produce "any documents requested by Respondent National Casualty that *relate* to the handling of the underlying claims and related litigation at issue in this arbitration."[10] In so ruling, the Panel recognized that in a dispute over claims ceded by First State to National Casualty for reinsurance payments, First State's documentation of its handling of those claims was relevant and must be produced to National Casualty.

First State is also rearguing the merits of its claim of privilege and potential "waiver." Again, however, the Panel expressly ruled that by virtue of First State's and National Casualty's "common interest in the resolution of claims made under the treaties in dispute," First State's claim-handling documentation was not privileged *as to National*

---

[8] Exhibit 5 to the Amended Petition (submitted under seal). The Privilege Log designated other withheld documents as non-responsive (NR) and National Casualty accepted that designation as made in good faith and did not press for their production. Exhibit 6 to the Amended Petition.

[9] Exhibit 7 to the Amended Petition, p. 3.

[10] Exhibit 8 to the Amended Petition.

*Casualty* and that their production to National Casualty would *not* constitute a waiver of any privilege that might apply *vis á vis* a third party.  Thus, First State's endeavor to give its disobedience an air of Ghandian nobility is implausible.  The Panel fully considered First State's concern that its compliance with the production order may be deemed in some unspecified future setting a waiver of the attorney-client and work-product privileges, and expressly rejected it, ruling that the ordered production "will not waive any such privilege against third parties."[11]  Having tried but failed to persuade the Panel, First State became bound by its holding on the issue, and having become so bound, it surely stood no risk of being found to have waived, i.e., voluntarily relinquished, its privilege claims.  *Kahn v. Royal Insurance Company,* 429 Mass. 572, 577 (1999); *Rambus, Inc. v. Infineon Technologies AG*, 220 F.R.D. 264275 (E.D.Va. 2004) (disclosure that is judicially compelled does not result in waiver of privileges).

In short, the Panel's rulings on the issues of relevance, privilege, waiver, and the nature of First State's response to its order are conclusive.  *See generally*, Ostrager and Vyscosil, Modern Reinsurance Law and Practice (Glasser LegalWorks 2000), § 14.06 at pp. 14-62 – 14-66 (and cases on preclusive effect of arbitral rulings collected therein).  Having never taken any steps to challenge the Panel's rulings, First State is precluded from now presenting its conduct to this Court as anything other than a calculated and unjustified refusal to produce relevant, non-privileged documents in defiance of the Panel's order.

---

[11]   See Exhibit 8 to the Amended Petition.

**III.** **Parties to An Arbitration Agreement Have a Duty to Abide by Arbitrators' Rulings as Long as they Remain in Effect and, as a Matter of Basic Contract Law, Fully Applicable to Arbitration Agreements, a Party's Breach of That Duty Entitles the Other Party to Terminate The Arbitration Agreement and Thus End the Arbitrators' Jurisdiction**

    **A.** **The Issue of Whether the Panel Lost Arbitral Jurisdiction Is for the Court**

As set forth in National Casualty's Amended Petition, the existence of a valid arbitration agreement raises "'a question of arbitrability' for the court to decide." *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002). The same holds for the issue of the survival of an arbitration agreement. *Id.* (*citing John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 546-547 (1964). *See also*, *Gulf Guaranty Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476, 487-488 (5th Cir. 2002) ("There are circumstances in which courts will intervene in the arbitral process when a challenge goes to the making of the agreement or suggests that the agreement is void or warrants rescission."); *Hooters of America Inc., v. Phillips,* 173 F.3d 933, 941 (4th Cir.1999) (affirming judicial rescission of an arbitration agreement where one party's conduct was inimical to a meaningful arbitration process).

For these reasons, it is perfectly appropriate for National Casualty to turn to this Court for a declaration that First State's defiance of the Panel's document production order entitled National Casualty to terminate the arbitration agreement, and thereby end the Panel's jurisdiction to conduct any further arbitral proceedings.

9

**B.    First State's Defiance of the Panel's Order Was a Material Breach of The Parties' Arbitration Agreement.**

In addition to straining to recharacterize the established facts concerning its conduct, which, alone, should warrant denial of its motion, First State disavows the legal significance of its actions. As set forth in National Casualty's Amended Petition, First State's refusal to comply with the Panel's order was a material breach of an obligation under the arbitration agreement and thus subject to the consequences dictated by basic contract principles; i.e. termination of the agreement to arbitrate. First State argument that National Casualty's contract/jurisdictional theory lacks "legal support" is without merit.

It is beyond dispute that an agreement to arbitrate is a specie of contract and stands "upon the same footing as other contracts." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *Doctor's Association v. Casarotto*, 517 U.S. 681, 683 (1996) (reiterating that general contract law applies to arbitration agreements). Consistent with this policy, the Federal Arbitration Act recognizes that an agreement to arbitrate may become revocable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

One such ground is that a party to a contract cannot breach its contractual obligations and, at the same time, insist on reaping the benefits of the contract. [*See* Amended Petition at pp. 12-13] "[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an

10

earlier time." Restatement (2d) of Contracts, § 237.[12] *See also*, *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 11 (1st Cir. 2000) ("Every enforceable contract involves a bargained-for exchange of obligations, the material breach of which by one party gives the other party a right to terminate."); *Prozinski v. Northeast Real Estate Services, LLC,* 59 Mass. App. Ct. 599, 610, 797 N.E.2d 415, 424 (2003). *See generally*, 17A Am. Jur. 2d, Contracts § 621 (and cases from numerous jurisdictions collected therein).

Under these ordinary contract rules, whose applicability to arbitration agreements in interstate transactions the FAA expressly honors and preserves, First State's breach freed National Casualty to terminate the arbitration agreement. That the contract cases elucidating this principle cited by National Casualty in its Amended Petition did not involve the exact same kind of contract or the same type of breach that First State committed here is surely a distinction without a difference, and one that First State should hardly be proud to invoke, for it demonstrates only that disregard for arbitral orders is rare indeed. Moreover, even if National Casualty's application of established legal principles to the facts of this case were entirely novel, surely in a common law system that, in of itself, is not an argument against such application. On the facts of this case, the

---

[12] As Comment (a) to § 237 explains,

> a material failure of performance, including defective performance as well as an absence of performance, operates as the non-occurrence of a condition. . . . [and] has, under this Section, these effects on the other party's remaining duties of performance with respect to the exchange. It prevents performance of those duties from becoming due, at least temporarily, and it discharges those duties if it has not been cured during the time in which performance can occur. The occurrence of conditions of the type dealt with in this Section is required out of a sense of fairness rather than as a result of the agreement of the parties. Such conditions are therefore sometimes referred to as "constructive conditions of exchange."

11

reasons for the recognition and application of National Casualty's theory of relief are straightforward and powerful and First State offers no reason in logic or policy why the theory should be rejected.

By agreeing to arbitrate their dispute, each party committed to a bargained-for exchange of obligations to abide by the arbitrator's decisions unless and until lawfully set aside by the arbitrator or a court. As the First Circuit has put it,

> if the parties have (1) entered into a valid arbitration agreement … and (2) the arbitration agreement covers the subject matter of the underlying dispute between them … then we will presume that the parties have made *a commitment* to have an arbitrator decide all the remaining issues necessary to reach a decision on the merits of the dispute.

*PaineWebber Inc. v. Elahi*, 87 F.3d 589, 599 (1st Cir. 1996) (italics added for emphasis). A "commitment to have an arbitrator decide" surely cannot mean submitting an issue to the arbitrator with the option to ignore his decision by the losing party. To the contrary, by agreeing to arbitrate disputes, First State, like National Casualty, agreed to be bound by the arbitrators' ruling unless and until reversed by proper means. This undertaking is surely the very essence of "binding" arbitration.

First State does not challenge the legal premise underlying National Casualty's claim as it neither disputes the validity of the contract law principle underlying National Casualty's position – on the contrary, it calls it an "unremarkable proposition"[13] – nor offers any reason why this proposition should not apply to arbitration agreements. Its only response is to reiterate the same conclusory and circular assertion that it cannot be

---

[13] *Id*. p. 9.

12

deemed to have breached the arbitration agreement because it has "fully complied" with all its obligations thereunder "regardless of whether it complied" with the Panel's order.[14]

As demonstrated in National Casualty's Amended Petition, First State's insistence on the freedom to act "regardless" of arbitral orders is utterly inimical to the functioning of arbitration as a fair, predictable, and effective dispute resolution system. Indeed, First State turns the integrity of the arbitration system on its head when it argues that it is National Casualty who, by resorting to a lawful and proper means to obtain relief from an arbitral award, has abandoned the commitment to arbitrate and "contravene[d] the strong federal policy favoring arbitration." There is certainly an Alice-in-Wonderland-like quality to this argument, as it is hard to envision conduct more likely to undermine the goals of arbitration than the license to self-help in disregard of an arbitral order in which First State indulged in this case.

Ultimately, in the absence of substantive legal argument against National Casualty's theory, First State resorts merely to dismissing it as "chimerical," "fanciful," "spurious," and "fallacious."[15] However, pejorative adjectives are no substitute for reasoned analysis. On such analysis, when First State decided to disobey the Panel's order, it breached its contractual obligations with respect to arbitration, thereby freeing National Casualty to terminate the arbitration agreement. Therefore, once National

---

[14]  Incredibly, on a motion to dismiss, without citing any basis in National Casualty's allegations or at least offering its own evidentiary support, First State insists that the Court simply accept as dispositive its counsel's assertion that it has not only "fully performed its obligations under the arbitration clause," but even the broader assertion that it has fully performed its obligations "under the reinsurance contracts themselves." First State's Memorandum, p. 8.

[15]  *Id.* pp. 2, 8, 9 and 10.

Casualty informed the Panel of its position on the effect of First State's breach, the Panel's jurisdiction ended and it should not have proceeded with a hearing and award.

**IV.** **National Casualty Has Set Forth Ample Grounds for its Alternative Claim that the Award Should Be Vacated Under Sections 10(a)(1) and (3) of the Federal Arbitration Act**

First State's refusal to produce the documents not only constituted a breach of the arbitration agreement, but also gave rise to an award that was the product of a fundamentally unfair hearing and "undue means." Thus, the award should be vacated under sections 10(a)(1) and 10(a)(3) of the FAA. [Amended Petition at pp. 17-21]

In its motion to dismiss, First State again contends that the arbitration was neither "fundamentally unfair" nor the product of "undue means" because First State did not violate any Panel order. This starting premise must be rejected for the reasons discussed above and in National Casualty's Amended Petition.

First State's other arguments likewise fail. As set forth in National Casualty's Amended Petition, conducting a hearing without the benefit of any of the 757 documents withheld by First State in contravention of the Panel's order compelling their production resulted in a hearing that was fundamentally unfair. *Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901,* 763 F.2d 34, 39-40 (1st Cir. 1985); *Home Indemnity Co. v. Affiliated Food Distributors, Inc.*, 1997 WL 773712 (S.D.N.Y. 1997); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997); *Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. S.D. Warren Co.*, 2004 WL 1484995 (D.Me. 2004).

First State counters that, due to the "irrelevance" of the documents it withheld from National Casualty, and National Casualty's freedom to introduce other evidence, the

decision to go on with the arbitration was not fundamentally unfair.[16] This argument deserves no serious consideration because it is (1) nothing more than an unsupported, conclusory assertion of counsel that the documents First State chose to produce to National Casualty were the only ones that were relevant, (2) expressly at odds with the Panel's decision to order the production of documents relating to First State's claim handling, and (3) contrary to the law in this circuit that a ceding company's documentation of claim handling, and particularly communications with and from counsel about the underlying claims, are highly probative of key issues defining the obligations of the reinsurer.

The materiality of such evidence to disputes between cedents and reinsurers is extensively laid out in the Amended Petition (at pp.7-11). As the cases cited in that discussion illustrate, the most probative and reliable evidence of a cedent's handling of a claim is its own and its counsel's analysis of the claim, particularly in connection with a dispute between the cedent and its own insured. Since that is precisely the body of evidence that First State withheld from National Casualty and the Panel, it must be presumed that its withholding had a severe prejudicial effect on National Casualty's ability to mount its defenses to First State's claims at the hearing and persuade the Panel. Given its ruling on the motion to compel, nothing in the Panel's final Award would support First State's argument that it deemed the withheld documents immaterial or cumulative. Even if the Panel had reached such a conclusion, given that it had never seen the documents, the conclusion would be without any foundation and thus constitute misconduct warranting the vacatur of its award. *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997)

---

[16] First State's Mem., pp. 12-15.

Nothing in First State's motion to dismiss rebuts this presumption. Rather, First State simply persists in the same Catch 22 posture it had assumed in the arbitration: withholding from National Casualty relevant evidence that is in First State's exclusive possession and control, while, at the same time, claiming that National Casualty does not have sufficient evidence to support its positions or to demonstrate the relevance of specific documents that were withheld. It is submitted that in these circumstances, the burden should be on First State to demonstrate to this Court, through actual evidence, not unsupported conclusory assertions of its counsel, that none of the documents it withheld in defiance of the Panel's Order would have made any difference in the outcome of the arbitration. Needless to say, as part of pre-trial discovery in this action, First State should be required to produce all of the 757 documents it withheld in the arbitration.

First State's final argument that, as a matter of law, the award was not procured by "undue means," within the meaning of 9 U.S.C. 10(a)(1), is also unpersuasive. Its first contention that no recovery can be had because National Casualty has not alleged sufficiently culpable conduct is groundless. First State's refusal to produce the documents was clearly deliberate and wrongful. While the Panel's intent in including in its Order a warning to First State of the consequences of non-compliance was obviously to induce compliance, it also had the unintended effect of aiding First State in its bad faith conduct by enabling First State to make its cynical cost-benefit analysis. This warning apparently allowed First State to (correctly) believe that the risk of the consequence spelled out by the Panel would be negligible, as compared to that of consequence of allowing the actual evidence of its handling of the claims at issue to be used by National Casualty and considered by the Panel.

In particular, given the number of the underlying claims and the diversity of the issues they presented, and the fact that the 757 documents were withheld in a completely undifferentiated manner, First State apparently calculated that the Panel would not be in the position to even connect any particular document to any particular claim or issue, much less draw any concrete inferences about it.  First State compounded this problem by including no meaningful information about the substance or subject matter of the withheld documents  [ REDACTED ], and designating as the person most knowledgeable for National Casualty's pre-hearing deposition a witness [ REDACTED ].[17]

Such a carefully calculated and orchestrated strategy to manipulate the Panel into deciding the merits of the case without a large body of highly material evidence is unquestionably an undue means to procure an award.  That First State's scheme was successful is no justification, and indeed, only demonstrates why the award must be vacated.  *The New York Times Co. v. Newspaper and Mail Deliveries' Union, 740 F. Supp. 240, 245 (S.D.N.Y. 1990)* ("disrespect for the arbitral process" and "resort to self-help rather than abide by the arbitration process" constitute unacceptable contemptuous conduct)*; First Preservation Capital, Inc. v. Smith, Barney, Harris, Upham & Co.,* 939 F. Supp. 1559, 1565-1566 (S.D. Fla.1996) (disregard for an arbitrator's discovery procedures constitutes "profound interference with and indifference to arbitration procedures")*; Givens v. Renteria,* 2003 WL 22951968 (Ill.App. 1 Dist 2003) ("duty to participate in the arbitration in good faith and a meaningful manner" includes duty to refrain from deliberate and contumacious "contempt of the arbitrators' authority.")

---

[17]  See Exhibit 15 to Amended Petition (submitted under seal).

**Conclusion**

For the reasons set forth above, First State's motion to dismiss National Casualty's Petition should be denied.

NATIONAL CASUALTY COMPANY,
By its Attorneys,


 _/s/ Natasha C. Lisman_____
Natasha C. Lisman, BBO #301700
Susan A. Hartnett, BBO #544672
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA  02114
(617) 227-3030

Dated:  November 5, 2004

#356037