UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------X

NATIONAL CASUALTY COMPANY,

        Petitioner,

        v.

FIRST STATE INSURANCE GROUP,

        Respondent.

-----------------------------------------------------X

Civil Action No.: 04-10167MLW

## MOTION OF FIRST STATE INSURANCE GROUP FOR AN ORDER DISMISSING NATIONAL CASUALTY COMPANY'S PETITION TO VACATE ARBITRAL ORDER

Respondent First State Insurance Group ("First State") respectfully moves this Court for an Order, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, dismissing National Casualty Company's Petition to Vacate Arbitral Order and Enjoin Further Arbitral Proceedings, Or, in the Alternative, Remand. In Support of this Motion, First State relies on the accompanying Memorandum of Law.

        First State Insurance Group
        By its attorneys,

        Mitchell S. King, Esq. (BBO#2728107)
        Thomas M. Elcock, Esq. (BBO #548027)
        Prince, Lobel, Glovsky & Tye LLP
        585 Commercial Street
        Boston, Massachusetts 02109
        (617) 456-8000

-and-

Lawrence S. Greengrass, Esq.
Lloyd A. Gura, Esq.
Todd A. Bakal, Esq.
Sanjit Shah, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004
(212) 804-4200

Dated: February 17, 2004

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(a)(2)

The undersigned counsel for the Respondent certifies that counsel for the parties have conferred in a good faith attempt to resolve or narrow the issues raised by this Motion, but were unable to reach any agreement.

_____
Thomas M. Elcock

## CERTIFICATE OF SERVICE

I, Thomas M. Elcock, hereby certify that on February 17, 2004, I served First State Insurance Group's Motion to Dismiss National Casualty Company's Petition to Vacate Arbitral Order and Enjoin Further Arbitral Proceedings, Or, in the Alternative, Remand, by causing copies to be delivered via ~~facsimile~~, hand delivery and first class mail, postage prepaid, to counsel of record for all parties.

_____
Thomas M. Elcock

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------X

NATIONAL CASUALTY COMPANY,

Petitioner,

v.                                    Civil Action No.: 04-10167MLW

FIRST STATE INSURANCE GROUP,

Respondent.

------------------------------------------------X

## RESPONDENT FIRST STATE INSURANCE GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS NATIONAL CASUALTY COMPANY'S PETITION TO VACATE ARBITRAL ORDER

First State Insurance Group
By its attorneys,

Mitchell S. King, Esq. (BBO#2728107)
Thomas M. Elcock, Esq. (BBO #548027)
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, Massachusetts 02109
(617) 456-8000

-and-

Lawrence S. Greengrass, Esq.
Lloyd A. Gura, Esq.
Todd A. Bakal, Esq.
Sanjit Shah, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004
(212) 804-4200

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................... ii

PRELIMINARY STATEMENT............................................................................ 1

FACTS................................................................................................................... 3

ARGUMENT......................................................................................................... 6

    POINT I

        THIS COURT MAY NOT REVIEW THE DECISION
        OF THE PANEL BECAUSE THE ARBITRATION ORDER
        ADDRESSES ONLY PROCEDURAL QUESTIONS............................. 6

    POINT II

        THE PETITION SHOULD BE DISMISSED BECAUSE THE
        ARBITRATION ORDER IS NOT A FINAL AWARD AND
        THEREFORE, MAY NOT BE REVIEWED BY THIS COURT............... 11

    POINT III

        EVEN IF THE ARBITRATION ORDER WERE A FINAL
        AWARD, AND IT IS NOT, THERE WOULD BE NO
        GROUNDS FOR ITS VACATUR UNDER THE FEDERAL
        ARBITRATION ACT........................................................................12

        A.     The Privileged Documents Are Irrelevant................................. 12

        B.     The Panel Did Not Engage in Misconduct................................14

    POINT IV

        THE PETITION SHOULD BE DISMISSED AS MOOT
        BECAUSE THE ARBITRATION HAS BEEN CONCLUDED............... 15

CONCLUSION..........................................................................................16

## TABLE OF AUTHORITIES

### CASES

Banco de Seguros del Estado v. Mut. Marine Office, Inc.,
344 F.3d 255 (2d Cir. 2003).................................................................. 9, 14

Commercial Union Ins. Co. v. Swiss Reins. Am. Corp.,
No. Civ. A. 00-12267-DPW, 2003 WL 1786863
(D. Mass. Mar. 31, 2003)..................................................................13, 14

Davidson v. Stanley, No. Civ. 02-190-JD,
2003 WL 21785151 (D.N.H. Aug. 4, 2003) ......................................................15

First Preservation Capital, Inc. v.
Smith Barney, Harris Upham & Co.,
939 F. Supp. 1559 (S.D. Fla. 1996)..........................................................10 n.4

Fradella v. Petricca, 183 F.3d 17 (1st Cir. 1999)................................................. 11

Green Tree Financial Corp. v. Bazzle, ___ U.S. ___,
123 S. Ct. 2402 (2003)....................................................................................6-7

Hart Surgical, Inc. v. UltraCision, Inc.,
244 F.3d 231 (1st Cir. 2001)....................................................................11

Hooters of Am. v. Phillips, 173 F.3d 933 (4th Cir. 1999)..................................... 9

Hoteles Condado Beach, La Concha and Convention Ctr.
v. Union de Tronquistas Local 901, 763 F.2d 34 (1st Cir. 1985)............................10

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79,
123 S. Ct. 588 (2002)................................................................................6, 7, 9

Nationwide Mut. Ins. Co. v. First State Ins. Co.,
213 F. Supp. 2d 10 (D. Mass. 2002)....................................................................11

New York Times Co. v.
Newspaper and Mail Deliverers Union of New York and Vicinity,
740 F. Supp. 240 (S.D.N.Y. 1990)..................................................................10 n.4

PaineWebber Inc. v. Elahi, 87 F.3d 589 (1st Cir. 1996)......................................7, 9

Prozinski v. Northeast Real Estate Servs., LLC,
59 Mass. App. Ct. 599, 797 N.E.2d 415 (2003)..................................................8

Ross-Simons of Warwick, Inc. v. Baccarat, Inc.,
217 F.3d 8 (1st Cir. 2000) ..............................................................................8

Shaw's Supermarkets, Inc. v.
United Food and Commercial Workers Union, Local 791,
321 F.3d 251 (1st Cir. 2003).............................................................................7

Travelers Cas. & Sur. Co. v.
Gerling Global Reins. Corp. of Am.,
285 F. Supp. 2d 200 (D. Conn. 2003)........................................................ 13, 14

Vimar Seguros y Reaseguros, S.A.
v. M/V Sky Reefer, 29 F.3d 727 (1st Cir. 1994),
aff'd, 515 U.S. 528, 115 S. Ct. 2322 (1995).........................................................8

Williams v. HealthAlliance Hosps., Inc.,
158 F. Supp. 2d 156 (D. Mass. 2001)................................................................ 8

## STATUTES

9 U.S.C. § 10..............................................................................................11, 12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------X

NATIONAL CASUALTY COMPANY,

               Petitioner,

       v.

FIRST STATE INSURANCE GROUP,

               Respondent.

Civil Action No.: 04-10167MLW

-------------------------------------------------X

### RESPONDENT FIRST STATE INSURANCE GROUP'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS NATIONAL CASUALTY COMPANY'S PETITION TO VACATE ARBITRAL ORDER

Respondent First State Insurance Group ("First State") submits this memorandum of law in support of its motion, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss National Casualty Company's ("National Casualty") Petition to Vacate Arbitral Order and Enjoin Further Arbitral Proceedings, Or, in the Alternative, Remand.

### PRELIMINARY STATEMENT

The instant Petition (the "Petition")[1] is nothing more than an impermissible attempt to embroil this Court in a discovery dispute that has arisen in the course of an on-going arbitration between First State and its reinsurer, National Casualty. During the arbitration, the arbitration panel (the "Panel") rendered a decision dated November 15, 2003 ordering First State to produce certain documents protected from disclosure by the attorney-client privilege and the work-product doctrine (the "November 15, 2003 Order"). The November 15, 2003 Order further provided that if First State did not produce the documents, the Panel would draw "whatever negative inferences [it deemed] appropriate in the presentation of First State's position in this matter."

---

[1]    A true and correct copy of the Petition is annexed hereto as Exhibit A.

First State decided to accept the possibility of a negative inference rather than produce the documents in view of case law holding that an insurer's disclosure of privileged documents to its reinsurers may result in a waiver of the privilege with respect to third parties, including its insureds. By order dated December 5, 2003 (the "Arbitration Order") the Panel deferred ruling on the potential consequences of First State's non-production until the arbitration hearing. Frustrated by its inability to obtain privileged documents that have absolutely no relevance to the matters to be decided, National Casualty now petitions this Court to vacate the Arbitration Order. National Casualty's Petition is entirely without merit, and should be dismissed for several reasons.

First, the United States Supreme Court has unequivocally held that in an arbitration, questions of procedure are to be decided by the arbitrator, not a judge. According to this precedent, as well as case law from the First Circuit, a court may only resolve questions concerning the arbitrability of a dispute. Because the Arbitration Order concerns only such procedural discovery matters as the consequences of a party's withholding of documents, the Petition fails to state a claim, and should be dismissed with prejudice.

Second, only a final arbitration decision, not an interlocutory one, may be reviewed by this Court. Here, the Arbitration Order is not final because it does not resolve a claim submitted in the demand for arbitration. Accordingly, National Casualty cannot challenge the Panel's decision, and its Petition should be dismissed.

Third, although a final award may be vacated where the arbitrators improperly refused to hear evidence pertinent and material to the controversy, the privileged documents that are the subject of the Arbitration Order have no relevance whatsoever to the instant arbitration. Consequently, even after a final award is rendered, National Casualty could not move to vacate the award on the ground that the arbitrators refused to "hear evidence pertinent and material to the controversy" under section 10(a)(3) of the Federal Arbitration Act.

Moreover, the Panel's decision to defer ruling on the potential consequences of First State's non-production until the hearing cannot, as National Casualty contends, under any

2

circumstances be considered misconduct by the arbitrators. Under the express terms of the reinsurance treaties, the Panel has broad discretion to craft appropriate remedies for the parties' conduct during the arbitration. What National Casualty really objects to is the Panel's decision not to impose a greater sanction on First State for not producing the documents. This is not a basis for vacating an award under the Federal Arbitration Act.

Finally, the arbitration hearing between First State was commenced on February 10, 2004 and has now been concluded. The Petition is therefore moot, and should be dismissed as such.

## FACTS[2]

The dispute between First State and National Casualty involves National Casualty's failure to honor its obligations under certain reinsurance treaties pursuant to which it agreed to reinsure First State for losses arising from various products liability, asbestos and environmental claims (collectively, the "Treaties"). The Treaties provided that the settlements made by First State were unconditionally binding on National Casualty:

> All loss settlements made by the Reinsured, provided they are within the conditions of the Reinsured's original policies and within the terms of this Contract, shall be unconditionally binding upon the Reinsurer and the Reinsurer's share shall be payable at the same time and in the same manner as the Reinsured may elect to pay, upon reasonable evidence of the amount paid or to be paid being given by the Reinsured.

(Fourth Casualty Excess of Loss Reinsurance Contract between National Casualty and First State, annexed as Exhibit 1 to the Petition, at Article XI, ¶ 2.)[3]

---

[2]    First State accepts the Petition's factual allegations as true only for the purposes of this motion.

[3]    The Second and Third Casualty Excess of Loss Treaties between First State and National Casualty, annexed as Exhibits 2 and 3 respectively to the Petition, have similar provisions concerning loss settlements. The only difference is that the phrase "within the conditions of the Reinsured's original policies" is omitted from Article XI, paragraph 2 of the Second and Third Casualty Excess of Loss Treaties.

First State commenced the instant arbitration against National Casualty by filing a demand for arbitration dated May 9, 2002. The Treaties require that any dispute between the parties be arbitrated, and provide that the arbitrators are not obliged to follow strict rules of law:

> If any dispute shall arise between the Reinsured and the Reinsurer, either before or after the termination of this Contract, with reference to the interpretation of this Contract or the rights of either party with respect to any transaction under this Contract, the dispute shall be referred to three arbitrators, one to be chosen by each party and the third by the two so chosen. . . . The arbitrators shall consider this Contract an honorable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law. The decision of a majority of arbitrators shall be final and binding on both the Reinsured and the Reinsurer.

(Fourth, Second and Third Casualty Excess of Loss Treaties, annexed to the Petition respectively as Exhibits 1, 2 and 3, at Article XVI, ¶ 1.)

During the course of the arbitration, the parties engaged in discovery, including document production and depositions. Among the documents that First State declined to produce were privileged attorney-client communications and documents constituting attorney work-product (the "Privileged Documents"). With respect to the Privileged Documents, First State provided to National Casualty and the Panel a privilege log identifying and describing the withheld documents. (First State's Privilege Log, annexed as Exhibit 5 to the Petition.) First State was reluctant to produce the Privileged Documents in view of case law holding that an insurer's disclosure of privileged materials to its reinsurers may result in a waiver of the privilege with respect to third parties, such as First State's policyholders.

National Casualty advised the Panel that it disagreed with First State's treatment of certain documents as privileged. (October 24, 2003 letter from Mark C. Kareken to members of the Panel, annexed as Exhibit 6 to the Petition.) Specifically, National Casualty argued that neither the attorney-client privilege nor the attorney work-product doctrine could be invoked by First State "because the reasons for the protections do not apply to National Casualty." (Id. at 2.) In response, First State submitted to the Panel a brief setting forth the reasons why the attorney-client privilege and the attorney work-product doctrine entitled it to withhold the Privileged

Documents, and why disclosure of those materials could result in a waiver of the privilege and work-product doctrine. (First State's Brief in Opposition to National Casualty's Request for Production of Privileged Documents, annexed as Exhibit 7 to the Petition.)

By letter dated November 15, 2003, the Panel directed that First State produce the Privileged Documents by November 20, 2003, or face the possibility of a negative inference:

> The Panel has reviewed and considered the recent correspondence from counsel regarding the issues presented by the discovery of certain documents listed in Petitioner First State's Privilege Log. With respect to these documents and other issues, the Panel issues the following Order (Mr. Gentry respectfully dissents noting the cases which hold that reinsurers do not have a common interest in the privileged documents):
>
> 1.    Because of their common interest in the resolution of claims made under the treaties in dispute, the Panel orders First State to produce any documents requested by Respondent National Casualty that relate to the handling of the underlying claims and related litigation at issue in this arbitration. The Panel believes that such production will not waive any such privilege claimed against third parties. These documents should be produced by November 20, 2003.
>
> In the event the requested documents are not produced, the Panel will, by necessity, be required to draw whatever negative inferences the Panel deems appropriate in the presentation of First State's position in this matter.

(November 15, 2003 Order, annexed as Exhibit 8 to the Petition.)

Determining that "the risk of disclosure of privileged documents . . . far outweighs any risks inherent in the Panel drawing a negative inference in the presentation of First State's position in this matter[,]" First State advised the Panel that it would not produce the Privileged Documents. (November 20, 2003 letter from Todd A. Bakal to members of the Panel, annexed as Exhibit 9 to the Petition.) National Casualty objected, and on December 5, 2003, the Panel issued the Arbitration Order, ruling that the arbitration hearing would not be postponed, and the consequences of First State's non-production would be deferred until the arbitration hearing, scheduled for February 10, 2004:

5

4.    The Panel will consider the negative implications of First State's refusal to comply with the Panel's order to produce the documents in any award issued by the Panel.

5.    The Panel has also reviewed the December 2, 2003, exchange of correspondence from the parties. The Panel believes that further briefing on potential consequences of First State's failure to comply with the Panel's earlier ruling regarding production of documents to which a claim of privilege is attached is not necessary at this time. The Panel has already reserved its right to decide that issue at the hearing scheduled above when it has received evidence sufficient for it to determine what consequences are appropriate.

(Arbitration Order, annexed as Exhibit 11 to the Petition.)

National Casualty commenced this proceeding seeking, inter alia, (a) a declaration that it is entitled to terminate the arbitration agreements set forth in the Treaties; (b) a declaration that the effect of such termination is to end the Panel's jurisdiction; and (c) an order vacating the Arbitration Order pursuant to 9 U.S.C. § 10, and enjoining further arbitral proceedings. The arbitration hearing that National Casualty seeks to enjoin has now been concluded.

## ARGUMENT

### POINT I

### THIS COURT MAY NOT REVIEW THE DECISION OF THE PANEL BECAUSE THE ARBITRATION ORDER ADDRESSES ONLY PROCEDURAL QUESTIONS

The United States Supreme Court has held that although questions of arbitrability, i.e., whether the parties to a dispute have agreed to resolve their differences through arbitration, are to be resolved by the courts, procedural questions that grow out of a dispute are for the arbitrator to decide. Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84, 123 S. Ct. 588, 592 (2002) ("Thus 'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide.") (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 918 (1964)). See also Green Tree Financial

Corp. v. Bazzle, ___ U.S. ___, 123 S. Ct. 2402 (2003) (vacating judgment of the South Carolina Supreme Court, holding that arbitrators, and not the courts, should decide questions of contract interpretation and arbitration procedures).

Thus, whether an arbitration is time-barred under arbitration rules is a procedural question to be determined by an arbitrator. Howsam, 537 U.S. at 592, 123 S. Ct. at 592 ("[W]e find that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability.'"). Similarly, the questions of whether an arbitration may proceed as a "class arbitration," or whether separate arbitration proceedings may be consolidated, must also be decided by an arbitrator. Bazzle, 123 S. Ct. at 2407 (class arbitrations); Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 791, 321 F.3d 251, 255 (1st Cir. 2003) ("Leaving the decision whether to consolidate the three proceedings in the hands of the arbitrator comports with long-standing precedent resolving ambiguities regarding the scope of arbitration in favor or arbitrability.").

In the instant proceeding, National Casualty would have this Court intervene in an ongoing arbitration to decide the purely procedural question of how to proceed in view of First State's decision not to produce the Privileged Documents. This has nothing whatsoever to do with the arbitrability of the dispute, which has already been arbitrated. Simply put, because there is no question that the parties have agreed to resolve their differences through arbitration, there is no reason for this Court to resolve a procedural question that is better left to the Panel. PaineWebber Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir. 1996) ("Put differently, the signing of a valid agreement to arbitrate the merits of the subject matter in dispute presumptively pushes the parties across the 'arbitrability' threshold; we will then presume that other issues relating to the substance of the dispute or the procedures of arbitration are for the arbitrator.").

Of no avail is National Casualty's tortured argument that "a material breach of the [arbitration] agreement excuses the other party from further performance under the agreement and entitles it to the termination of the arbitral proceeding, or, if the breach is curable and the

party wishes to cure it, to a stay of the proceeding until the completion of the cure." (Petition at 12.)

This argument is fundamentally flawed because First State has not breached the arbitration agreement. Rather, it has complied with all the procedures set forth in the Treaties' arbitration clauses. National Casualty has cited no cases to support the fanciful notion that First State's non-production is tantamount to a breach of the arbitration agreement. First State's decision not to produce the Privileged Documents is an entirely separate matter from its compliance with the terms of the arbitration clauses. Having fully performed its obligations under the arbitration clause (and, indeed, under the Treaties themselves), First State cannot be considered to have breached it.

The cases that National Casualty does cite, i.e., Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8 (1st Cir. 2000), and Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 797 N.E.2d 415 (2003), do not support the spurious claim that non-compliance with an arbitrator's order breaches the arbitration agreement. Rather, as National Casualty itself concedes, these cases stand for the limited, and unremarkable, proposition that one party's material breach of a contract excuses the other party from further performance of that contract. Ross-Simons, 217 F.3d at 11, Prozinski, 59 Mass. App. Ct. at 610, 797 N.E.2d at 424. As discussed above, First State has not breached the arbitration clause set forth in the Treaties because it has complied with its obligations thereunder. National Casualty should therefore be prohibited from using First State's withholding of the Privileged Documents as an excuse for cavalierly "throwing over" the arbitration agreement. (Petition at 15.)

National Casualty's contention that First State's non-compliance with the November 15, 2003 Order entitles it "to end the arbitration at issue, with prejudice" (Petition at 15), is not only legally erroneous, but also contravenes the strong federal policy favoring arbitration. Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727, 730 (1st Cir. 1994), aff'd, 515 U.S. 528, 115 S. Ct. 2322 (1995); Williams v. HealthAlliance Hosps., Inc., 158 F. Supp. 2d 156, 159 (D. Mass. 2001). Under National Casualty's analysis, a party to an arbitration would be able to

8

end the arbitration any time its adversary did not comply with an order of the arbitrator. Again, National Casualty does not and, indeed, cannot cite any case law to support this fallacious theory.

By relieving the Panel from "judicial formalities," and excusing it from following strict rules of law, the arbitration agreement at issue confers broad discretion upon the Panel to fashion an appropriate remedy for First State's decision not to produce the Privileged Documents. Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 261 (2d Cir. 2003) ("The arbitration clause . . . at issue provided that '[t]he arbitrators shall consider this Treaty an honourable engagement rather than merely a legal obligation; they are relieved of all judicial formalities and may abstain from following the strict rules of law.' Courts have read such clauses generously, consistently finding that arbitrators have wide discretion to order remedies they deem appropriate.") (emphasis in original). Thus, National Casualty is protected by the arbitration clause to which it agreed when it entered into the Treaties, and neither needs, nor is entitled to, this Court's intervention to resolve a purely procedural question. E.g., Howsam, 537 U.S. at 84, 123 S. Ct. at 592; PaineWebber, 87 F. 3d at 599 ("Thus, if the parties have (1) entered into a valid arbitration agreement . . . and (2) the arbitration agreement covers the subject matter of the underlying dispute between them . . . then we will presume that the parties have made a commitment to have an arbitrator decide all the remaining issues necessary to reach a decision on the merits of the dispute.").

Contrary to National Casualty's claim, First State's decision not to produce the Privileged Documents, which as discussed in Point III.A, infra, are irrelevant, does not undermine the integrity of the proceeding or render it unfair or partial. In one case cited by National Casualty, Hooters of Am. v. Phillips, 173 F.3d 933 (4th Cir. 1999), the Court affirmed the district court's denial of a motion to compel arbitration by Hooters, which had "set up a dispute resolution process utterly lacking in the rudiments of even-handedness[.]" Hooters, 173 F.3d at 935. The Court concluded that Hooters had breached the arbitration agreement with its employee because it had promulgated "rules so egregiously unfair as to constitute a complete default of its

9

contractual obligation to draft arbitration rules and to do so in good faith." <u>Id.</u> at 938. Here, First State and National Casualty negotiated the rules governing the instant arbitration, and National Casualty does not argue that the procedures in place are unfair. Thus, there has been no "wholesale relinquishment of the right to orderly and fair disposition of disputes." (Petition at 12.)

Similarly, in <u>Hoteles Condado Beach, La Concha and Convention Ctr. v. Union de Tronquistas Local 901</u>, 763 F.2d 34 (1st Cir. 1985), the First Circuit affirmed the district court's vacatur of an arbitration award where the arbitrator refused to give weight to the transcript of a criminal trial, which was the only record of testimony by a party's sole witness. This is not the case in the arbitration between National Casualty and First State, which has produced all relevant non-privileged documents to its adversary. The instant arbitration can under no circumstances be considered unfair or partial because there is no indication that the Panel would refuse to consider relevant evidence presented by National Casualty, and <u>Hoteles Condado Beach</u> is inapposite.[4]

Accordingly, First State's motion to dismiss the Petition should be granted.

---

[4]      Another case cited by National Casualty, <u>New York Times Co. v. Newspaper and Mail Deliverers Union of New York and Vicinity</u>, 740 F. Supp. 240 (S.D.N.Y. 1990), is also inapposite. That case involved contempt of an order by the district court in a labor dispute. <u>First Preservation Capital, Inc. v. Smith Barney, Harris Upham & Co.</u>, 939 F. Supp. 1559 (S.D. Fla. 1996), also cited by National Casualty, actually supports First State's position that courts should defer to arbitrators on questions of arbitration of procedure:

> From the case law, it appears that arbitrators have considerably more discretion over rules and procedures than do federal courts. Plaintiffs here are requesting the Court to impose procedural dictates on the Panel, which <u>Forsythe</u> makes clear is inappropriate. This is a case in which the procedural questions affecting final disposition of the matter should be left to the Panel.

<u>Id.</u> at 1565 (citing <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543, 84 S. Ct. 909 (1964); <u>Forsythe Int'l S.A. v. Gibbs Oil Co. of Texas</u>, 915 F.2d 1017 (5th Cir. 1990)).

## POINT II

### THE PETITION SHOULD BE DISMISSED BECAUSE THE ARBITRATION ORDER IS NOT A FINAL AWARD AND THEREFORE, MAY NOT BE REVIEWED BY THIS COURT

Section 10 of the Federal Arbitration Act sets forth the procedure for vacating arbitration awards. 9 U.S.C. § 10. Under this statute, only an arbitration award that is final may be vacated by a federal district court. Hart Surgical, Inc. v. UltraCision, Inc., 244 F.3d 231, 233 (1st Cir. 2001) ("In applying [9 U.S.C. § 10], we have followed the principle that '[i]t is essential for the district court's jurisdiction that the arbitrator's decision was final, not interlocutory.'") (quoting El Mundo Broad. Corp. v. United Steelworkers of Am., 116 F.3d 7, 9 (1st Cir. 1997)); Nationwide Mut. Ins. Co. v. First State Ins. Co., 213 F. Supp. 2d 10, 15 (D. Mass. 2002) ("Only a final [arbitration] decision – not an interlocutory one – is appealable . . . .").

"Normally, an arbitral award is deemed 'final' provided it evidences the arbitrators' intention to resolve all claims submitted in the demand for arbitration, even though the arbitrators purport to retain jurisdiction in the event the need arises to resolve some subsidiary matter, such as damages or backpay calculations." Fradella v. Petricca, 183 F.3d 17, 19 (1st Cir. 1999). An award that does not resolve all claims in arbitration may be deemed final for the purposes of 9 U.S.C. § 10 if it finally and definitely disposes of a separate, independent claim. Hart Surgical, Inc., 244 F.3d at 234 (citing Metallgesellschaft A.G. v. M/V Capitan Constante, 790 F.2d 280, 283 (2d Cir. 1986)).

Here, the Arbitration Order does not dispose of any claim submitted in the demand for arbitration. As discussed in Point I, supra, it merely addresses the procedural question of how to proceed in view of First State's withholding of the Privileged Documents. Thus, the Arbitration Order is not a final award and may not be challenged in this Court. The Petition should therefore be dismissed.

## POINT III

## EVEN IF THE ARBITRATION ORDER WERE A FINAL AWARD, AND IT IS NOT, THERE WOULD BE NO GROUNDS FOR ITS VACATUR UNDER THE FEDERAL ARBITRATION ACT

As demonstrated in Point II, supra, the Arbitration Order is not a final award. Even if it were final, however, there would be no grounds for its vacatur. Section 10 of the Federal Arbitration Act provides that an award may be vacated under the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any of other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

National Casualty claims that the "Panel's order compelling National Casualty to proceed with the arbitration while deprived of full and fair access to key evidence is fundamentally unfair and constitutes grounds for vacating the Panel's order[,]" pursuant to 9 U.S.C. § 10(a)(3). (Petition at 16.) In fact, the Arbitration Order is not fundamentally unfair because the Privileged Documents are irrelevant to the claims in arbitration, and the Panel's deferral of its ruling until the hearing does not constitute misconduct.

A.    The Privileged Documents Are Irrelevant

This case boils down to whether National Casualty is obligated to reimburse First State for the settlements it made on claims ceded to the Treaties. Thus, the dispute is one of contract interpretation: whether First State handled, settled and ceded the claims in accordance with the terms of the underlying policies and the Treaties. The only relevant documents, therefore, are

the underlying policies, the Treaties themselves and documents that show how First State actually handled, settled and ceded the claims. Opinions of First State's counsel about how they believed the claims should be handled, or whether they believed that the settlements were appropriate in light of then-current law, are simply not material in this contract dispute.

The cases cited by National Casualty, Travelers Cas. & Sur. Co. v. Gerling Global Reins. Corp. of Am., 285 F. Supp. 2d 200 (D. Conn. 2003), and Commercial Union Ins. Co. v. Swiss Reins. Am. Corp., No. Civ. A. 00-12267-DPW, 2003 WL 1786863 (D. Mass. Mar. 31, 2003), are inapposite. In Travelers, the reinsured contended that the only issue before the court was whether the "settlement of the number of occurrences issue with OCF and subsequent allocation of the payments under that settlement on a one-occurrence basis was reasonable under the circumstances." Travelers, 285 F. Supp. 2d at 208 (emphasis in original). Because the reinsured presented the issue in this manner, documents concerning the basis of settlement negotiations with the underlying insured were relevant. Id. at 209. In the dispute between First State and National Casualty, First State is arguing not only that its practice of handling, settling and ceding claims on a single occurrence basis was reasonable under the circumstances, but also that its practice was proper under the terms of both the underlying policies and the Treaties. Thus, documents that were relevant in Travelers are not relevant in the present matter.

In Commercial Union, the reinsured sought reimbursement from its reinsurer for a settlement with the insured, the dollar value of which was in excess of the limits expressly set forth in the reinsurance certificates. Commercial Union, 2003 WL 1786863 at *7. In ruling on cross motions for summary judgment, the court considered "the discussions among [the reinsured] and its attorneys over the question whether New York courts would interpret the [reinsured's] umbrella policies as providing annualized limits." Id. at *3. Although the case does not discuss how documents memorializing those discussions were produced, it is reasonable to infer from the facts that the reinsured voluntarily produced those documents to justify the structure of the settlement it reached with its insured.

13

In any event, in denying the reinsured's motion and granting the reinsurer's motion, the court held that "the clear language of the [reinsurance] Certificates does not permit the imposition of annualized limits on [the reinsurer] in excess of the stated per occurrence and aggregate limits." Id. at *10. Thus, the court ultimately concluded that the documents memorializing discussions between the reinsured and its attorneys were not relevant to the outcome of the case.

Moreover, in the present arbitration, the Panel is expressly "relieved of all judicial formalities and may abstain from following the strict rules of law." (Fourth, Second and Third Casualty Excess of Loss Treaties, annexed to the Petition respectively as Exhibits 1, 2 and 3, at Article XVI, ¶ 1.) Consequently, the Panel is not constrained to follow either Travelers or Commercial Union.

Because the Privileged Documents are not relevant to the dispute between First State and National Casualty, National Casualty would not be able to obtain a vacatur of a final award on the ground that it was denied full and fair access to "key" evidence.

B.    The Panel Did Not Engage in Misconduct

National Casualty further contends that it is entitled to a vacatur of the Arbitration Order because the Panel engaged in misconduct by refusing to "stay or adjourn the arbitration proceedings in the face of First State's conduct." (Petition at 18.) Like all of National Casualty's other arguments, this one also is groundless.

The Panel's decision not to postpone the arbitration hearing does not deprive National Casualty of a fundamentally fair arbitration because, as discussed above, the Privileged Documents are utterly irrelevant to the claims in arbitration. Moreover, despite the obvious non-materiality of the Privileged Documents, the Panel directed that they be produced by November 20, 2003. (November 15, 2003 Order, annexed as Exhibit 8 to Petition.) Having agreed to an arbitration clause that gives the Panel broad discretion to fashion appropriate remedies for the conduct of the parties during the arbitration, see Banco de Seguros del Estado, 344 F.3d at 261, National Casualty cannot now complain that the Panel has exercised that discretion by deferring

14

its decision concerning the consequences of First State's non-production until the hearing. Accordingly, there is no basis for a vacatur of the Arbitration Order.

## POINT IV

## THE PETITION SHOULD BE DISMISSED AS MOOT BECAUSE THE ARBITRATION HAS BEEN CONCLUDED

The arbitration between First State and National Casualty commenced on February 10, 2004, and has now been concluded. Thus, the Petition, which seeks, inter alia, to terminate the jurisdiction of the Panel and enjoin further arbitral proceedings, should be dismissed as moot. Davidson v. Stanley, No. Civ. 02-190-JD, 2003 WL 21785151, at *3 (D.N.H. Aug. 4, 2003) ("'[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.' Powell v. McCormack, 395 U.S. 486, 496 (1969). Federal courts must dismiss moot cases to 'avoid advisory opinions on abstract propositions of law.'" See Hall v. Beals, 396 U.S. 45, 48 (1969)).

15

## CONCLUSION

For the foregoing reasons, First State's motion to dismiss the Petition should be granted in its entirety.

<div style="margin-left:40%">

First State Insurance Group
By its attorneys,

_Mitchell S. King_

Mitchell S. King, Esq. (BBO#2728107)
Thomas M. Elcock, Esq. (BBO #548027)
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, Massachusetts 02109
(617) 456-8000

-and-

Lawrence S. Greengrass, Esq.
Lloyd A. Gura, Esq.
Todd A. Bakal, Esq.
Sanjit Shah, Esq.
Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004
(212) 804-4200

</div>

Dated: February 17, 2004

## CERTIFICATE OF SERVICE

I, Thomas M. Elcock, hereby certify that on February 17, 2004, I served First State Insurance Group's Memorandum Of Law In Support Of Its Motion to Dismiss National Casualty Company's Petition to Vacate Arbitral Order and Enjoin Further Arbitral Proceedings, Or, in the Alternative, Remand, by causing copies to be delivered via facsimile, hand delivery and first class mail, postage prepaid, to counsel of record for all parties.

<div style="margin-left:40%">

_Thomas Elcock_

Thomas M. Elcock

</div>