UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
----------------------------------------------------X
NATIONAL CASUALTY COMPANY,

                                  C. A. No. 04-10167-MLW

            Plaintiff,

        v.

FIRST STATE INSURANCE GROUP,

           Defendant.
----------------------------------------------------X

## DEFENDANT FIRST STATE INSURANCE GROUP'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS NATIONAL CASUALTY COMPANY'S AMENDED PETITION TO VACATE AN ARBITRAL AWARD AND FOR OTHER RELIEF

### PRELIMINARY STATEMENT

In its opposition to Defendant First State Insurance Group's ("First State") motion to dismiss the Amended Petition, Plaintiff National Casualty Company ("National Casualty") attempts to obfuscate the sole issue to be decided: whether National Casualty's pleading states a claim upon which relief can be granted. It does not.

First, constant repetition of a frivolous argument does not make it meritorious. Indeed, there is still no basis for the position that First State's alleged non-compliance with an interim arbitral discovery award entitled National Casualty to "throw over" the arbitration agreement and declare an end to the panel's jurisdiction. Even National Casualty's own cases establish that when there has been some alleged default or failure in the arbitration process – and there was none here – the Federal Arbitration Act (the "FAA") provides no "mechanism beyond those geared toward returning the parties to arbitration[.]"[1] National Casualty's disappointment with the way in which the panel exercised its broad discretion in resolving a discovery dispute does

---

[1]     Gulf Guaranty Life Ins. Co. v. Conn. General Life Ins. Co., 304 F.3d 476, 487 (5th Cir. 2002).

not constitute grounds for vacating the March 12, 2004 final award (the "Final Award"), which was rendered after a week-long full evidentiary hearing.

Second, the panel's refusal to compel First State to produce documents that were either privileged, or that constituted attorney work-product (the "Privileged Documents") in the face of First State's decision to accept a negative inference, did not render the hearing fundamentally unfair. National Casualty does not contend that it was deprived of the opportunity to present as evidence relevant, non-privileged documents from First State's files, or that its examination and cross-examination of witnesses were improperly restricted in any way. Having chosen arbitration as the process by which to resolve its disputes with First State, National Casualty cannot now complain that it was unable to present every shred of evidence it believed was relevant. Simply put, the panel was well within its rights to say "enough is enough." Not surprisingly, National Casualty still cannot articulate, as it must, the prejudice it allegedly suffered by its inability to present the Privileged Documents as evidence. Rather, it lamely contends that "it must be presumed that its withholding had a severe prejudicial effect on National Casualty's ability to mount its defenses to First State's claims at the hearing and persuade the Panel."[2] Such windmill tilting falls far short of what National Casualty must show to obtain a <u>vacatur</u> of the Final Award on the ground that arbitrators engaged in misconduct by refusing to hear pertinent and material evidence.

Finally, there was no "carefully calculated and orchestrated strategy to manipulate the Panel into deciding the merits of the case without a large body of highly material evidence . . . ."[3] Rather than risk waiver of the privilege with respect to the Privileged Documents, First State

---

[2] National Casualty's Opposition to First State's Motion to Dismiss the Amended Petition ("National Casualty's Opposition"), at 15.

[3] National Casualty's Opposition, at 17.

2

chose to risk a negative inference from the Panel. First State explained its position to the panel, National Casualty had the opportunity to respond, and the panel ruled that the hearing would proceed. Specifically, after hearing each side's arguments, the panel refused to grant National Casualty's claims for interim relief based on First State's nondisclosure. The Amended Petition makes no allegation from which it can be inferred that First State's conduct rose to the level of fraud or corruption, a prerequisite for an arbitration award to be vacated on the ground that it was procured by undue means.

Thus, the Amended Petition fails to state a claim upon which relief can be granted, and should be dismissed with prejudice, and First State's unopposed motion to confirm the Final Award should be granted.

## ARGUMENT

### POINT I

### FIRST STATE'S MOTION IS PROPERLY LABELED A MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

In an obvious attempt to distract the Court's attention from the Amended Petition's complete lack of merit, National Casualty contends that "First State's purported motion should be denied because it is an anomalous procedural invention inconsistent with any conceivably relevant rule of federal procedure . . . ." (National Casualty's Opposition, at 4.) In fact, First State's motion, and the memorandum of law in support thereof, establish that even when the facts alleged in the Amended Petition are considered in a light most favorable to National Casualty, the Amended Petition fails to state a claim. See, e.g., Finnern v. Sunday River Skiway Corp., 984 F.2d 530, 534 (1st Cir. 1993). National Casualty claims, however, that because First State disputes its interpretation of certain facts, the motion cannot be considered as having been

3

made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and should therefore be denied. National Casualty is mistaken.

Neither the Court, nor the party seeking dismissal of the pleading, has any obligation to accept as true bald, conclusory statements that are without any factual basis. <u>Malachowski v. City of Keene</u>, 787 F.2d 704, 711 (1st Cir. 1986) ("However, appellants' allegations are bald and conclusory, and do not include sufficient factual detail to defeat a motion to dismiss."). Thus, in its motion to dismiss, First State properly challenges, among other things, National Casualty's bald and conclusory assertion that the Privileged Documents were "highly material to National Casualty's evaluation of First State's claims." (Amended Petition, at 7.) As discussed in First State's Initial Memorandum, that counsel files and internal company memoranda may have been produced in other reinsurance disputes, does not mean that the Privileged Documents were pertinent and material to the arbitration proceeding between First State and National Casualty. (First State's Initial Memorandum, at 17.) At issue in *this* arbitration was whether First State settled and ceded claims in accordance with the terms of the underlying policies with its insureds and the reinsurance contracts. (First State's Initial Memorandum, at 13.) The only documents that could possibly be relevant to that question were the documents to which National Casualty had access, <u>i.e.</u>, the underlying policies, the reinsurance contracts, and factual documents showing how First State settled and ceded the claims. National Casualty does not even attempt to allege in other than conclusory terms, how the documents available to it were insufficient or how the withheld materials would be relevant here.

Indeed, the Privileged Documents could not possibly have been relevant in this context because theoretical opinions of counsel that might concern how a claim *should* be settled or ceded have no bearing on how a claim was *actually* settled and ceded. Put another way, whether

4

First State's counsel provided any advice on a topic at issue here (which we do not concede occurred) or whether First State followed such hypothetical advice about how to settle and cede its claims, or disregarded that advice, is of no relevance to what First State actually did. National Casualty is only required to indemnify First State for what it actually paid, not what it considered and rejected.

Moreover, even when a party moving to dismiss a pleading for failure to state a claim disputes the non-moving party's interpretation of the facts alleged, a Court may still consider the motion as one made pursuant to Rule 12(b)(6). Palandjian v. Pahlavi, 586 F. Supp. 671, 672 (D. Mass. 1984) ("When considering a motion to dismiss, the Court must treat the facts contained in the plaintiff's complaint and affidavits as true, and it must resolve any dispute in the facts in favor of the plaintiff."); LaVoie v. General Aerospace Materials Co., Inc., 579 F. Supp. 298, 299 (D. Mass. 1984) (same).

Accordingly, First State's challenge to National Casualty's baseless assertion that the Privileged Documents were "highly material," is not improper in the context of this motion, which should be granted.

## POINT II

### NATIONAL CASUALTY, NOT FIRST STATE, IS IMPROPERLY SEEKING TO RELITIGATE THE FINDINGS OF THE PANEL

National Casualty's claim that First is seeking to "relitigate issues as to which the Panel had made conclusive *and* preclusive rulings[,]" is based on the false premise that "First State has recharacterized the basic facts until they are, essentially, unrecognizable." (National Casualty's Opposition, at 5). In reality, the "basic facts" are not disputed by either party: 1) By letter dated November 15, 2003, the panel issued an order stating that if First State did not produce the Privileged Documents by November 20, 2003, it would, "by necessity, be required to draw

5

whatever negative inferences [it deemed] appropriate in the presentation of First State's position in this matter." (November 15, 2003 interim award, Amended Petition Ex. 8); 2) First State did not produce the Privileged Documents, and explained its reasons for that decision. (November 20, 2003 letter from Todd A. Bakal, Amended Petition Ex. 9); 3) The Panel considered the respective positions of the parties, denied National Casualty's request for a stay based on First State's decision not to disclose the Privileged Documents, and ordered the hearing to proceed as scheduled. (December 5, 2003 interim award, Amended Petition Ex. 11); and 4) Although the Final Award was substantially in favor of First State, the panel nonetheless expressly sanctioned it for withholding the Privileged Documents by not awarding it attorneys' and arbitrators' fees despite the lack of merit in National Casualty's positions. (Final Award, Amended Petition Ex. 13.)

By seeking to vacate the Final Award, National Casualty, and not First State, seeks to relitigate the panel's "conclusive and preclusive rulings" regarding the appropriate remedy for First State's decision to withhold the Privileged Documents. As explained in First State's Initial Memorandum, however, arbitration panels enjoy broad discretion to determine the appropriate penalty for a party's alleged misconduct. (First State's Initial Memorandum, at 10.) Thus, the Amended Petition is nothing more than an attempt by National Casualty to have this Court pass judgment on a procedural determination made by the panel. This is clearly improper. Shaw's Supermarkets, Inc. v. United Food and Commercial Workers Union, Local 791, 321 F.3d 251, 254 (1st Cir. 2003) ("Since each of the three grievances is itself concededly arbitrable, we think the answer is clear. Under Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002), this is a procedural matter for the arbitrator."); First Preservation Capital, Inc. v. Smith Barney, Harris Upham & Co., 939 F. Supp. 1559, 1565 (S.D. Fla. 1996)

(stating that "arbitrators have considerably more discretion over rules and procedures than do federal courts. Plaintiffs here are requesting the Court to impose procedural dictates on the Panel, which Forsythe makes clear is inappropriate") (citing Forsythe International, S.A. v. Gibbs Oil Co. of Texas, 915 F.2d 1017 (5th Cir. 1990)).

National Casualty contends that the purported "risk-benefit analysis" it claims First State undertook as respects the November 15, 2003 interim award proves that First State's decision to withhold the Privileged Documents constituted deliberate and willful disobedience of the panel's award. (National Casualty's Opposition, at 6-7.) First State does not consider its refusal to produce the Privileged Documents and the corresponding potential for a negative inference to be a violation of the panel's order, but rather a reasoned choice based on the ruling and all known circumstances. To the extent such an analysis took place, National Casualty's argument ignores the law of this Circuit, which recognizes risk-benefit considerations as a legitimate method of legal reasoning:

> We do not share the district court's discomfiture with means/end rationality or – what amounts to the same thing – cost/benefit analysis. At least when the decisionmaker uses a common currency of exchange and operates under conditions of reasonable certainty, cost/benefit analysis is a perfectly legitimate mode of legal reasoning, frequently employed by both courts and agencies.

United States v. Santana, 6 F.3d 1, 7 (1st Cir. 1993) (citing Richard A. Posner, The Problems of Jurisprudence, 105-08 (1990)).

Moreover, contrary to what National Casualty claims, the panel did not "expressly reject" First State's concerns that producing the Privileged Documents would result in a waiver of the attorney-client privilege with respect to third-parties. (National Casualty's Opposition, at 8.) Rather, the panel merely stated without any conviction that it *believed* that the production would not result in a waiver:

7

> The Panel *believes* that such production will not waive any such privilege claimed against third parties.

(November 15, 2003 interim award, Amended Petition Ex. 8) (emphasis supplied.) With all due respect to the arbitration panel, the prospect of putting First State's multi-billion dollar claim portfolio at risk, based on an equivocal pronouncement by laypersons of the legal ramifications of producing privileged documents, was simply untenable. While a case cited by National Casualty, Rambus, Inc. v. Infineon Technologies AG, 220 F.R.D. 264, 275 (E.D. Va. 2004), stands for the proposition that "'judicially compelled' disclosure is not a voluntary one[,]" there appears to be no comparable judicial decision in an arbitration setting holding that disclosure directed by an arbitration panel does not result in a waiver of the privilege.

It is time for National Casualty to realize that the panel's ruling on the appropriate remedy for First State's response to the November 15, 2003 interim award is indeed conclusive. (National Casualty's Opposition, at 8.) Having lost its bid to have the panel impose a penalty of its liking, National Casualty is precluded from relitigating the issue in this Court.

## POINT III

### FIRST STATE'S DECISION NOT TO PRODUCE THE PRIVILEGED DOCUMENTS DID NOT TERMINATE THE ARBITRATION AGREEMENT OR END THE PANEL'S JURISDICTION

In National Casualty's view, the FAA permits a party to unilaterally declare an end to the arbitration agreement when its adversary has purportedly breached an order of the arbitrators. (National Casualty's Opposition, at 9-13.) This groundless theory is soundly refuted by the Fifth Circuit's decision in Gulf Guaranty Life Ins. Co. v. Conn. General Life Ins. Co., 304 F.3d 476 (5th Cir. 2002), one of the cases on which National Casualty relies. In Gulf, the Court held that even when there has been some purported default in the arbitration process, the party not responsible for the alleged breach must see the arbitration through to its conclusion:

8

> The FAA does not provide therefore for any court intervention prior to issuance of an arbitral award beyond the determination as to whether an agreement to arbitrate exists and *enforcement of that agreement by compelled arbitration of claims that fall within the scope of the agreement even after the court determines some default has occurred.* Moreover, *enforcement of an agreement to arbitrate under the FAA does not appear to include any mechanism beyond those geared toward returning the parties to arbitration,* thus appearing not to authorize compensation by a court to parties in the form of damages prior to issuance of an arbitral award.

Id. at 487 (emphasis supplied).[4]

Thus, there is no basis for National Casualty's frivolous claim that First State's decision not to produce the Privileged Documents allowed it to "throw over" the arbitration agreement and declare an end to the panel's jurisdiction. As discussed in First State's Initial Memorandum, permitting a party to unilaterally terminate an arbitration agreement whenever it believed its adversary failed to comply with an interim arbitration award would eviscerate the strong policy in favor of arbitration. (First State's Initial Memorandum, at 10.) Moreover, because arbitrators have wide latitude to punish a party deemed to have abused the arbitration process, there is no danger that the opposing party will not receive a fair hearing. First Preservation Capital, Inc., 939 F. Supp. at 1565 ("If arbitrators are not permitted to impose the ultimate sanction of dismissal on plaintiffs who flagrantly disregard rules and procedures put into place to control discovery, arbitrators will not be able to assert the power necessary to properly adjudicate claims.").

Contrary to National Casualty's assertion, First State emphatically challenges the

---

[4] Citing Hooters of Am. v. Phillips, 173 F.3d 933 (4th Cir. 1999), the Gulf Court acknowledged that "[t]here are circumstances in which courts will intervene in the arbitral process when a challenge goes to the making of the agreement or suggests that the agreement is void or warrants rescission." Gulf, 304 F.3d at 487-88. As explained in First State's Initial Memorandum, in Hooters, the Fourth Circuit affirmed the District Court's denial of a motion to compel arbitration where the employer had promulgated "rules so egregiously unfair as to constitute a complete default of its contractual obligation to draft arbitration rules and to do so in good faith." Thus, in Hooters, the fundamentally unfair nature of the employer-drafted arbitration agreement led the Court to conclude that the employee was entitled to rescind the contract. Hooters, 173 F.3d at 940. Here, unlike the situation in Hooters, there is no claim that the arbitration clauses in the reinsurance treaties are fundamentally unfair.

9

fundamental premise of its claim, i.e., that an alleged breach of an interim arbitration award constitutes a breach of the arbitration agreement. (National Casualty's Opposition, at 12.) Essentially, National Casualty's argument is the result of its conflation of principles of contract law with principles of arbitral procedure. It is axiomatic that an interim award issued by an arbitration panel is no more a contract than is a judicial order rendered by a Court to whose jurisdiction the parties have contractually consented. While breach of a contract may permit the non-breaching party to terminate the contract, breach of an interim arbitration award or Court order may subject the breaching party to sanctions. Reasoned analysis establishes that there is no merit to National Casualty's position, and the Amended Petition should be dismissed.

### POINT IV

### NATIONAL CASUALTY HAS FAILED TO ALLEGE ANY GROUNDS FOR *VACATUR* OF THE FINAL AWARD PURSUANT TO SECTION 10(a)(3) OF THE FAA

Even in its Opposition to First State's motion to dismiss, National Casualty cannot articulate why the Privileged Documents were pertinent and material, contending that "it must be presumed that its withholding had a severe prejudicial effect on National Casualty's ability to mount its defenses to First State's claims at the hearing and persuade the Panel." (National Casualty's Opposition, at 15.) Such conclusory allegations are not sufficient to warrant the vacatur of the Final Award. Chevron Transp. Corp. v. Astro Vencedor Compania Naviera, S.A., 300 F. Supp. 179, 181-82 (S.D.N.Y. 1969) ("[Petitioner's moving papers] contain[] allegations of prejudice which are either distressingly conclusory or indicative of comparatively minor inconvenience to counsel. . . . [T]here is nothing in the record which would permit a finding that undisclosed parts of the logs contained information which would have been helpful to Chevron in its submission to the panel.") Moreover, National Casualty offers no support for its position that "the burden should be on First State to demonstrate to this Court . . . that none of the

documents it withheld in defiance of the Panel's Order would have made any difference in the outcome of the arbitration." (National Casualty's Opposition, at 16.) There is simply no basis for the Court to shift the burden on a petition to vacate an arbitration award from the petitioner to the party opposing the petition. Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) ("A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances . . . .")

Even if the 757 Privileged Documents were relevant, National Casualty has not alleged that those documents were the *only* evidentiary materials that supported its defenses. Compare Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 21 (2d Cir. 1997) ("Because Pollock as sole negotiator for Bertek was the *only* person who could have testified in rebuttal of appellees' fraudulent inducement claim, and in support of Bertek's fraudulent inducement claim, and the documentary evidence did not adequately address such testimony, there was no reasonable basis for the arbitrators to conclude that Pollock's testimony would have been cumulative with respect to those issues."), with Hoteles Condado Beach, La Concha and Convention Ctr. v. Union de Tronquistas Local 901, 763 F.2d 34 (1st Cir. 1985) (affirming vacatur of an arbitration award where the arbitrator refused to give weight to the transcript of a criminal trial, which was the *only* record of testimony by a party's *sole* witness). Consequently, there is no basis for National Casualty's claim that its inability to use the Privileged Documents in the presentation of its position at the hearing resulted in a hearing that was fundamentally unfair.[5] (National Casualty's

---

[5] National Casualty also cites Home Indem. Co. v. Affiliated Food Distribs., Inc., No. 96 Civ. 9707 (RO), 1997 WL 773712 (S.D.N.Y. Dec. 12, 1997) to support its argument that the arbitration proceeding between it and First State was fundamentally unfair. (National Casualty's Opposition, at 14.) For the reasons set forth in First State's Initial Memorandum, however, that case is inapposite. (First State's Initial Memorandum, at 18 n.9.) Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. S.D. Warren Co., No. Civ. 03-225-B-W, 2004 WL 1484995 (D. Me. Jun. 4, 2004), also does not support National Casualty's position. In that case, the magistrate judge recommended that the District Court grant the union's motion for judgment on the pleadings with respect to certain claims because the arbitrator's decision "was premised on a factual finding on an issue not identified during the actual hearing and concerning which the Union was unable to present evidence or argument." Id. at *12. In a

Opposition, at 14.) Thus, because the Final Award was rendered after a week-long full hearing that was fundamentally fair to both sides, there is no basis for vacating that award pursuant to section 10(a)(3) of the FAA. Indeed, National Casualty has not even attempted to state in a non-conclusory fashion what information the withheld documents might contain that would in any way impact the panel's decision. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lambros, 1 F. Supp. 2d 1337, 1343 (M.D. Fla. 1998) (holding that a "'federal court may vacate an arbitrator's award under [9 U.S.C. § 10(a)(3)] only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties and denies them a fair hearing.'") (quoting Robbins v. Day, 954 F.2d 679, 685 (11th Cir. 1992)).

### POINT V

### NATIONAL CASUALTY HAS FAILED TO ALLEGE ANY GROUNDS FOR *VACATUR* OF THE FINAL AWARD PURSUANT TO SECTION 10(a)(1) OF THE FAA

The Amended Petition also fails to sufficiently allege that First State procured the Final Award by "undue means" pursuant to section 10(a)(1) of the FAA. As set forth in First State's Initial Memorandum, "undue means" requires proof of intentional misconduct rising to the level of fraud or corruption. (First State's Initial Memorandum, at 18) (citing Painewebber Group., Inc. v. Zinsmeyer Trusts P'ship., 187 F.3d 988, 991 (8th Cir. 1999).) Here, the panel decided not to compel the production of the Privileged Documents *after* hearing National Casualty's arguments on the subject. Thus, there was no "fraud" or "corruption," and therefore, no undue means. A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1404 (9th Cir. 1992) ("[W]here the fraud or undue means is not only discoverable, but discovered and brought to the attention of the arbitrators, a disappointed party will not be given a second bite at the apple.").

---

decision dated November 10, 2004, the District Court rejected that recommendation. Paper, Allied-Industrial, Chemical and Energy Workers Int'l Union v. S.D. Warren Co., No. Civ. 03-225-B-W, 2004 WL 2536811, at *1 (D. Me. Nov. 10, 2004).

Nevertheless, National Casualty maintains that a "cynical cost-benefit analysis" purportedly conducted by First State constituted "bad faith" conduct. (National Casualty's Opposition, at 16.) However, whether or not First State internally engaged in such an analysis, National Casualty cannot point to any action taken by First State that possibly could have had any effect on the panel, and therefore, could be considered to amount to fraud, corruption or bad faith. Moreover, the First Circuit has clearly held that even if such an analysis occurred, it is a "perfectly legitimate mode of legal reasoning, frequently employed by both courts and agencies." United States v. Santana, 6 F.3d 1, 7 (1st Cir. 1993). This is especially true where, as here, the panel expressly gave First State the option of producing the Privileged Documents or facing the possibility of a negative inference. Having failed to allege any conduct by First State that amounted to fraud or corruption, National Casualty is not entitled to vacatur of the Final Award pursuant to section 10(a)(1) of the FAA.

In addition, National Casualty's Opposition does not even address the fact that the Amended Petition completely fails to allege the necessary causal relation between the purported undue means and the arbitration award. Painewebber Group., Inc., 187 F.3d at 994.

The cases cited by National Casualty do not support its claim that the Final Award was procured by undue means. For example, in New York Times Co. v. Newspaper and Mail Deliverers Union of New York and Vicinity, 740 F. Supp. 240 (S.D.N.Y. 1990), the Court held that certain letters showing "disrespect for the arbitration process" were contumacious because they constituted contempt of a temporary restraining order. Id. at 244-45. In First Preservation Capital, Inc. v. Smith Barney, Harris Upham & Co., 939 F. Supp. 1559 (S.D. Fla. 1996), the District Court confirmed the arbitration panel's award sanctioning a party, holding that "[d]eference given to arbitrators' decisions accompanies not only a review of the final order

itself, but also arbitrators' decisions 'to control the order, procedure and presentation of evidence.'" Id. at 1563 (quoting Nitram Inc. v. Industrial Risk Insurers, 848 F. Supp. 162, 165 (M.D. Fla.1994)). Finally, in Givens v. Renteria, 347 Ill. App. 3d 934, 808 N.E.2d 1009 (Ill. App. Ct. 2004), the court held that the arbitrators' finding that the defendants engaged in contumacious conduct was not unwarranted where the defendants had walked out of the arbitration hearing before its conclusion.

In sum, the Amended Petition utterly fails to state a claim for vacatur of the Final Award pursuant to section 10(a)(1) of the FAA, and should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in First State's Initial Memorandum its Memorandum of Law in Support of its Motion to Confirm the Final Award, the Amended Petition should be dismissed in its entirety, and the Final Award should be confirmed.

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney(s) of record for each other party by hand mail on 11/19/04

First State Insurance Group
By its attorneys,

_Thomas Elcock_
Mitchell S. King, Esq. (BBO#2728107)
Thomas M. Elcock, Esq. (BBO #548027)
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, Massachusetts 02109
(617) 456-8000

Mound, Cotton, Wollan & Greengrass
One Battery Park Plaza
New York, NY 10004
(212) 804-4200

Dated: November 19, 2004

14