UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NATIONAL CASUALTY COMPANY,<br>Petitioner | )<br>)<br>) |
| v. | ) CIVIL ACTION NO: 04-10167MLW<br>)<br>) |
| FIRST STATE INSURANCE GROUP,<br>Respondent | )<br>) |

**PETITIONER'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS PETITION TO VACATE ARBITRATION AWARD UNDER §§ 9 U.S.C. 10(A)(1) AND (3)**

This supplemental memorandum is submitted by Petitioner National Casualty Company ("National Casualty") pursuant to the Court's Order of December 7, 2004 that National Casualty "file a supplemental memorandum, and any supporting affidavits or other evidence, addressing whether the court should vacate the arbitral award under [the Federal Arbitration Act (FAA)] 9 U.S.C. §§ 10(a)(1) and (3) and the deferential standard related to them." National Casualty's Amended Petition invokes vacatur under these FAA provisions as an alternative to the declaratory and injunctive relief sought on the basis that the arbitration Panel lost jurisdiction to resolve the parties' dispute as a result of First State's breach of the arbitration clause by willfully refusing to comply with the Panel's order requiring the production of 757 documents.

**PROCEDURAL AND FACTUAL HISTORY**

The procedural and factual history of the arbitration episode under review in this action are detailed in National Casualty's Amended Petition and the evidentiary exhibits

1

thereto, as well as in its Opposition to First State's Motion to Dismiss, and are incorporated here by reference. In addition, National Casualty submits the Affidavit of Mark Kareken, Esq., the in-house counsel who represented it at the arbitration.

In essence, National Casualty predicates its FAA-based claim on First State's admittedly deliberate refusal to comply with the Panel's production order, as well the Panel's handling of that refusal. The Panel had rejected First State's privilege and relevance objections to National Casualty's document request as to several hundred documents and ruled that National Casualty was *entitled* to them. Yet, when faced with First State's announcement that it still would not produce the documents as required by the Panel's order, the Panel refused to even pause and allow the parties and itself to consider how it should respond to this extraordinary and, surely, unexpected development in the arbitration. [Kareken Aff. ¶¶36-37.] Instead, it proceeded full speed ahead with the final evidentiary hearing and a decision on the merits - without the withheld documents. As a consequence, National Casualty was, in effect, deprived of access to, and the opportunity to present, highly material evidence that was in First State's exclusive possession and control [Kareken Aff. ¶37], while First State succeeded in positioning itself to manipulate the outcome of the case by unilaterally controlling what evidence would enter the record and immunizing its chosen evidence from contradiction and impeachment.

## ARGUMENT

### I.    Standard of Review on Motion to Vacate an Arbitration Award

In the order requiring the present memorandum, the Court refers to the "deferential standard related to" the judicial review of arbitration awards under sections

10(a)(1) and (3) of the FAA. We respectfully suggest that judicial review of arbitral awards must be informed not only by the deferential standard, but also by the standard of fairness in the way the arbitration was conducted. While the FAA unquestionably requires judicial deference and thereby expresses the policy of favoring arbitration as a dispute resolution institution, it balances respect for the autonomy of that institution with insistence on fairness and integrity in arbitral proceedings. Indeed, it is precisely because the outcomes of arbitral proceedings are virtually unreviewable, and yet have the binding effect of judicial judgments, that assuring that they are the product of a fundamentally just process is all the more important. While the FAA expresses and implements the policy of deference by limiting the grounds on which a court may vacate an arbitral award, it expresses and implements the policy of fairness by empowering the courts to do so on specified grounds, including those set forth in Sections 10 (a)(1) and (3).

In *Commonwealth Coatings Corp. v. Continental Casualty Co.*, a case involving impartiality and the appearance of impartiality of arbitrators, the Supreme Court stated that the relevant provisions of Section 10 (a) standards "show a desire of Congress to provide not merely for *any* arbitration, but for an impartial one." 393 U.S. 145, 147 (1969) (emphasis supplied). The same is necessarily also true of the Section 10(a) provisions at issue here: they "show a desire of Congress to provide not merely for any arbitration," but for one free from "undue means" in the procurement of an award, and from the arbitrators' "refus[al] to hear evidence pertinent and material to the controversy; or …any other misbehavior by which the rights of the parties have been prejudiced."

These standards are not mechanistic formulas but, rather, essentially qualitative ethical norms. Given human ingenuity for an endless variety of acts and omissions in

violation of such norms, applying them requires careful examination and evaluation of the circumstances of each case. The crucial, bottom-line question a court must answer in conducting such scrutiny is whether, under the particular circumstances the case, the award

> was based on [the arbitrator's] *consideration of all relevant evidence*, once the parties to the dispute have had *a full* opportunity to present their cases.

*Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901,* 763 F.2d 34, 38 (1st Cir. 1985). (Emphasis added.)

In *Hoteles Condado,* the First Circuit affirmed the district court order vacating an arbitration award on the ground that the arbitrator's refusal to give any weight to testimony admitted into evidence violated fundamental fairness. Other illustrations of the types of arbitrator conduct concerning evidence that have been deemed to infect arbitral proceedings with unfairness warranting vacatur include: *Chevron Transport Corp. v. Astro Vencedor Compania Naviera, S.A.*, 300 F. Supp. 179, 181 (S.D.N.Y. 1969) (recognizing the "affirmative duty of arbitrators to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other side before the hearing is closed" and recognizing that a failure to discharge that duty would constitute a violation of 10(a)(3)); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (vacating award where panel's refusal to keep record open to permit witness to testify was fundamentally unfair and deprived moving party of adequate opportunity to present its case); *Westvaco Corp. v. Local 579, United Paperworkers Int'l. Union*, 1992 WL 121372 (D. Mass. 1992) (holding that arbitrator's "blanket decision" to exclude certain evidence resulted in a fundamentally unfair hearing under 10(a)); *Home Indemnity*

4

*Co. v. Affiliated Food Distributors, Inc.*, 1997 WL 773712 (S.D.N.Y. 1997) (vacating award and holding that "the touchstone of fundamental fairness" was lacking where the panel's security order was made without facial review of the underlying claim, and effectively obstructed the moving party from defending itself; *Cf., Iran Aircraft Industries v. Avco Corp.*, 980 F2d. 141, 146 (2nd Cir. 1992) (where a party "was denied the opportunity to be heard in a meaningful time or in a meaningful manner," resulting award unenforceable under the New York Convention For Recognition and Enforcement of Foreign Arbitral Awards.)

As set forth in National Casualty's prior pleadings and discussed below, National Casualty has met its burden of establishing that the arbitration panel's wholly ineffective response to First State's brazen refusal to produce relevant documents "was a procedural decision so aberrant that it deprived [National Casualty] of a fundamentally fair hearing" and, accordingly, is "one of those very unusual cases in which an arbitration award must be vacated." Westvaco Corp., 1992 WL 121372 at *8, *9 .

## II. The Panel's Award Must be Vacated Because Requiring the Hearing to Go Forward Despite First State's Refusal to Comply with the Panel's Order That It Produce Documents Was Fundamentally Unfair

The Panels' order compelling National Casualty to proceed with the arbitration without the benefit of hundreds of relevant documents First State refused to produce was fundamentally unfair and requires that the award be vacated under 9 U.S.C. § 10(a)(3). This section of the FAA provides that an arbitration award should be overturned where the "arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced" and has been widely interpreted to require that an award be

vacated where the proceeding lacked "fundamental fairness." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997). While arbitrators are not required to "follow all niceties observed by federal courts," *Bell Aerospace Co. v. Local 516, International Union,* 500 F.2d 921, 923 *(*2d Cir. 1974) they must "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Hoteles Condado,* 763 F.2d at 39.

*Hoteles Condado* illustrates that denial of an adequate opportunity to present evidence is not limited to literal exclusion of evidence but includes acts or omissions that in their functional effect on the aggrieved party amount to the same thing. As has been articulated in more detail in National Casualty's prior pleadings, exhibits, and briefs, and is further shown in the Affidavit of Mark Kareken submitted herewith, in this case the Panel rendered its decision on the basis of an evidentiary record that lacked a large body of evidence it had ordered to be produced - "any documents requested by Respondent National Casualty that relate to the handling of the underlying claims and related litigation at issue in this arbitration." [Amended Petition Exhibit 8.]

As Attorney Kareken explains in his affidavit and is amply illustrated in reinsurance case law, *e.g. Travelers Cas. & Sur. Co. v. Gerling Global Reinsurance Corp. of America*, 285 F. Supp. 2d 200 (D. Conn. 2003), such claim-related documentation, and particularly the very category of materials First State withheld – analyses by and communications with the reinsured's coverage counsel in the underlying dispute - are precisely the stuff of a reinsurer's defenses. [Kareken Aff. ¶¶20, 39] As a direct consequence of First State's refusal to produce such documents and National Casualty having been forced to mount its defense without them, National Casualty surely

6

did not "have full opportunity to present" its case and the Panel's award was just as surely not "based on its consideration of all relevant evidence." *Hoteles Condado*, 763 F.2d. at 38.

In short, this is not a case in which an arbitrator, in the exercise of his authority over discovery and evidence, denies a motion to compel or excludes evidence he finds irrelevant or otherwise inadmissible, or duplicative – all decisions entitled to judicial deference. Here, by virtue of the Panel's ruling on National Casualty's request to compel and its description of the documents to be produced, the documents that First State kept out of the record were indisputably material and would have been admitted but for First State's conduct. The prejudicial effect on National Casualty also cannot plausibly be disputed: it was forced to confront an opponent who had exclusive possession and control of the most relevant and probative evidence about its settlement of the underlying claims and presentation of those losses to National Casualty and maneuvered itself into the position of being able to pick and choose what went into the record, free from any worry about any fodder in its own files for the other side's cross-examination, impeachment and contradiction.

Indeed, the Panel did nothing to erase the prejudice to National Casualty that resulted from First State's blatant refusal to produce documents. To the contrary, its warning to First State of an "adverse inference" was entirely illusory, and was necessarily so given First State's conduct. In particular, the "privilege log" created by First State failed to link any single document with any one of the multiple substantive claims at issue. Moreover, the "description" of each document was generally limited to one of two non-descriptive phrases: i.e. "communication with counsel" or "notes reflecting

7

discussions with counsel." [See Amended Petition Exhibit 5 (redacted).] In these circumstances, the Panel could not possibly have applied any "adverse inference" to any particular claim, other than to have dismissed all of First State's claims in their entirety.

Because the Panel could only guess which claims the withheld documents related to, the only reasonable adverse inference that could be drawn against First State was that the withheld documents contained information that directly negated First State's claim of a good faith and reasonable settlement as to each and every one of the ten claims involved in the arbitration. The Panel did not make this or any other adverse inference against First State, however, and instead found that First State had met its burden of proving that the underlying settlements "were reasonable and conducted in good faith." [Amended Petition Exhibit 13] While the Panel expressed its "disappointment" with what it termed "First State's policy regarding production of privileged documents" and declined to award fees on this basis, this "disappointment" with First State's bad conduct was neither an "adverse inference" nor sufficient to provide National Casualty with "an adequate opportunity to present its evidence and argument" and the fundamentally fair hearing it was entitled to on the merits of the claims. *Hoteles Condado*, 763 F.2d at 39.

Fundamental fairness required that the Panel act in such a way as to ensure that National Casualty was able to adequately present its defense at the hearing. To the extent that the Panel believed that drawing adverse inferences from First State's withholding of documents was the sole sanction within its power, then the only adverse inference about this undifferentiated mass of documents that the Panel could reasonably have drawn was the inference that the documents established First State's bad faith in how it settled the underlying claims and/or the way those claims were presented for payment to National

8

Casualty. Such an adverse inference would have required an award in favor of National Casualty. In the alternative, and for the same reasons, the Panel should have dismissed or stayed First State's claims, without prejudice to reinstatement of the arbitration upon First State's compliance with the Panel's order. Because the Panel took no such action, and effectively deprived National Casualty of the opportunity to present material evidence to the Panel at the hearing, the award in First State's favor must be vacated.

### III. The Panel's Award Must be Vacated Because it Was Also Procured as a Result of First State's Undue Means Within the Meaning of Section 10(a)(1)

National Casualty has also met its burden of showing that the award should be vacated under § 10(a)(1) of the FAA as the product of First State's "undue means."[1] *See e.g. Spiska Engineering v. SPM Thermo-Shield, Inc.*, 678 N.W.2d 804 (S.D. 2004) (remanding for further determination of whether award was procured by undue means based on party's withholding of documentary evidence); *Chevron Transport Corp. v. Astro Vencedor Compania Naviera, S.A.*, 300 F. Supp. 179 (S.D.N.Y. 1969).

In *Spiska,* the moving party filed a motion to vacate an arbitration award on the grounds that the award was procured by the undue means of its opponent, Thermo-Shield, based on Thermo-Shield's withholding of certain documents from production during the arbitration process. Unlike this matter, the specific contents of the withheld evidence became known to Spiska after the arbitration hearing when they surfaced in other lawsuits. As in this case, however, in its motion to vacate, Spiska contended that "it was limited in substantiating its claim at the arbitration hearing" because the documents had not been produced.

---

[1] That section of the FAA provides that award may be vacated where procured "by fraud, corruption or undue means."

9

The court first acknowledged that a motion to vacate based on "undue means" requires proof of intentional misconduct or some type of bad faith in the procurement of an award. Therefore, to prevail on its motion to vacate "Spiska must prove that Thermo-Shield withheld the documents for an improper purpose. In other words, it must be shown that Thermo-Shield was dishonest or deceptive in its withholding of these documents implying some wrongdoing or selfish motive." 678 S.W.2d at 807. In addition, Spiska would need to show "a nexus between the bad faith behavior and the procurement of the arbitration award." *Id*. Because Spiska had subsequently obtained the withheld material, and therefore was in a position to show that the withheld documents were critical to its ability to prepare its case and cross examine witnesses, the court remanded the matter to the trial court to make further findings.

In this case, as in *Spiska,* there is no question that First State's conduct was willful and deliberate, and not simply the product of carelessness or innocent oversight. *Compare PaineWebber Group, Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988 (8th Cir. 1999) (holding that prevailing party's failure to produce certain documents in discovery during arbitration proceeding did not constitute "undue means" within the meaning of 10(a)(1) where the conduct was due to errors and oversights that are apt to attend the process of claiming privilege for a large group of corporate documents, rather than a deliberate or nefarious motive.) Although, unlike in *Spiska,* National Casualty does not have the excluded evidence in hand, National Casualty submits that it has shown an adequate nexus between the undue means and the award in First State's favor given

the underlying materiality of the kinds of documents withheld by First State and their undisputed relevance. [2]

However, to the extent the Court would require a more detailed showing of prejudice than is possible given the fact that National Casualty does not have the withheld evidence in its possession, the Court should stay National Casualty's motion to vacate and order First State to produce the documents, with a subsequent opportunity for further briefing. Such limited discovery is clearly permissible in aid of a motion to vacate, where necessary to resolve the petition. See e.g. Frere v. Orthofix, Inc., 2000 WL 1789641 *4 (S.D.N.Y. 2000) and cases cited, (noting the availability of discovery on a post-arbitration proceeding "where relevant and necessary to the determination of an issue raised by such an application.")

### IV.   Conclusion

For all of the above reasons, National Casualty respectfully requests that the Court vacate the arbitration award in First State's favor.

NATIONAL CASUALTY COMPANY,
By its Attorneys,

 /s/ Natasha C. Lisman
Natasha C. Lisman, BBO #301700
Susan A. Hartnett, BBO #544672
Sugarman, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA  02114
(617) 227-3030

Dated: January 14, 2005

#358367

---

[2] Where, as here, the Panel either ignored or rejected National Casualty's requests for relief from First State's intentional conduct, it may seek relief under §10(a)(1). *See In the Matter of the Arbitration Between Trans Chemical Ltd. .and China National Machinery Import and Export Corp.*, 978 F. Supp. 266, 304-306 (S.D.Tex. 1997) (declining to vacate award under 10(a)(1) based on party's accidental failure to produce documents, and where moving party did not seek any relief from arbitration panel for opponent's conduct.)