UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

NATIONAL CASUALTY CO.,          )
    Plaintiff,                 )
                               )
    v.                         )     C.A. No. 04-10167-MLW
                               )
FIRST STATE INSURANCE GROUP,    )
    Defendant.                  )

MEMORANDUM AND ORDER

WOLF, D.J.                                    April 28, 2005

This memorandum is based on the transcript of the decision rendered orally on February 17, 2005, in which the court denied plaintiff National Casualty Company's ("National Casualty") Amended Petition to Vacate an Arbitral Order under §10 of the Federal Arbitration Act ("FAA"), see 9 U.S.C. §§10(a)(1) and (3), confirmed the arbitration award pursuant to 9 U.S.C. §9, and allowed defendant First State Insurance Group's ("First State") Motion to Dismiss the remainder of National Casualty's Amended Petition. This memorandum adds some citations, clarifies some language, and expands some discussion.

* * *

I. BACKGROUND

This case arises out of an arbitration of a reinsurance dispute between First State and National Casualty. During the arbitration, First State refused to turn over documents to National Casualty on the ground that they were protected by the attorney/client privilege. In response, at National Casualty's request, the Arbitration Panel (the "Panel") ordered First State to

produce the documents and cautioned First State that failure to produce them would require the Panel to draw a negative inference as to their contents. First State did not produce the documents.

National Casualty sought a stay of the arbitration proceedings until the documents were produced. The Panel denied National Casualty's request for a stay. Subsequently, on January 26, 2004, National Casualty filed a petition with this court asking that the court enjoin further arbitral proceedings on the ground that First State's failure to comply with the discovery order was a breach of the arbitration agreement. In the alternative, National Casualty asked the court to vacate the Panel's decision not to stay the proceedings. The arbitration proceedings were still pending when National Casualty filed its petition.

On February 17, 2004, First State filed a Motion to Dismiss National Casualty's petition, arguing that a court cannot review interlocutory orders of an arbitration panel. On April 14, 2004, First State also filed a motion for sanctions on the grounds that National Casualty's petition was patently frivolous and, therefore, First State was entitled to recover its fees and expenses. National Casualty opposed both motions.

The arbitration proceedings progressed as the parties were making their filings in this court and, on March 12, 2004, the Panel issued a final award in favor of First State. On March 18, 2004, National Casualty paid most of the arbitration award to First

State through its agent.

On April 1, 2004, National Casualty moved to amend its petition to incorporate facts related to the Panel's award. First State opposed the Motion to Amend, arguing that it would be futile because National Casualty paid the award and there was, therefore, no longer a dispute between the parties.

In an August 30, 2004 Order, this court allowed National Casualty's Motion to File an Amended Petition, without prejudice to future consideration of whether the motion was futile. In its Amended Petition, National Casualty argued: 1) that the court should overturn the arbitration award because First State's refusal to produce the documents amounted to a material breach of the arbitration agreement which deprived the Panel of jurisdiction; and 2) that the court should vacate the award under Sections 10(a)(1) and (3) of the FAA. See 9 U.S.C. §§10(a)(1), (3).

On October 8, 2004, First State filed a Motion to Dismiss National Casualty's Amended Petition. In addition, First State filed a motion requesting that the court confirm the final arbitration award. Opposition and reply briefs were filed with regard to the Motion to Dismiss the Amended Petition.

On December 7, 2004, the court issued an Order stating that it intended to review the portion of National Casualty's Amended Petition arising under Section 10 of the FAA as a motion and not as a complaint. The parties did object to this Order, and the court

has analyzed National Casualty's request for vacatur as a motion.

For reasons explained in detail below, the court is allowing First State's motion to dismiss the portion of National Casualty's Amended Petition which alleges that First State's refusal to produce the documents deprived the Panel of jurisdiction. In essence, National Casualty has failed to state a claim that First State's conduct during the arbitration eliminated the Panel's jurisdiction to arbitrate the dispute. In addition, the court is denying National Casualty's motion to vacate the arbitration award because National Casualty has failed to demonstrate that it was so prejudiced by the Panel's decision to proceed without the withheld documents that it was denied a fundamentally fair hearing. The court is also denying First State's motion for sanctions.

II. THE FACTS

Unless otherwise indicated, the following facts are not in dispute. First State is the reinsured and National Casualty is the reinsurer under three reinsurance contracts ("Treaties") providing First State reinsurance coverage for losses it sustained either as a direct insurer or as a reinsurer of its insureds' underlying liabilities. See Amended Petition, ¶5; see also Amended Petition, Exhibits 1-3. Each Treaty provides for the arbitration of any dispute between First State and National Casualty with reference to the reinsurance contracts. Amended Petition, ¶5.

On May 9, 2002, First State made a demand for arbitration of

two claims for reinsurance payments. First State sought to recover reinsurance payments from National Casualty in connection with losses it had sustained from settlements with its insureds. Id., ¶6. The claims were submitted to arbitration and discovery commenced in early 2003. Id., at ¶¶6, 7.

The arbitration was to decide whether National Casualty, as reinsurer, was obligated to reimburse First State for settlements made by First State with its insureds in connection with asbestos non-product liability claims.  First State's obligations to its insureds were related to the number of occurrences of liability. See Kareken Aff, ¶27. The greater the number of occurrences, the larger First State's liability to its insureds. Id.

First State's right to reinsurance was also tied to the number of occurrences of liability.  If claims were settled on a single-occurrence basis, First State would reach the threshold required for reinsurance coverage quickly, and thus maximize its potential reinsurance recovery.  Conversely, if claims were settled on a multiple-occurrence basis, First State would be entitled to reinsurance protection on a comparatively smaller proportion of its liability. Id.

In billing National Casualty for its settlements with its insureds, First State presented the settlements as involving a single-occurrence theory of liability. Id. Believing that the asbestos losses could not be a single occurrence and that First

5

State selected this approach to maximize its reinsurance recovery, National Casualty refused to settle the claims, ultimately resulting in the arbitration now in issue. Id.

On July 14, 2003, First State declined to produce numerous documents in the course of discovery. In response, the Panel ordered First State to identify all documents it was withholding and to itemize such documents providing enough detail to allow verification of the reasonableness of nonproduction. Amended Petition, ¶7; see also Amended Petition, Exhibit 4. First State produced a log of the documents on October 13, 2003, in which it listed the withheld documents and briefly stated its grounds for withholding them. Of the listed documents, the sole stated ground for withholding 757 was that they were privileged, either as communications with, or the work product of, counsel retained to advise and defend First State in connection with the claims it had agreed to settle. Amended Petition, ¶8; see also Amended Petition, Exhibit 5.

On October 24, 2003, National Casualty moved to compel production of the documents listed in First State's privilege log. Amended Petition, ¶9; see also Amended Petition, Exhibit 6. National Casualty argued that the protections of the attorney-client privilege and the work product doctrine did not apply to National Casualty because, as one of First State's reinsurers, National Casualty had a vested interest in First State's defenses

6

of claims for coverage. Id. National Casualty also argued that it had a contractual right to review all information relating to the Treaties. Id. First State opposed the Motion to Compel on the ground that its production of the documents would potentially constitute a waiver of the attorney-client privilege and also on the ground that the documents were irrelevant. Amended Petition, ¶10; see also Amended Petition, Exhibit 7.

On November 15, 2003, the Panel ordered First State to produce the 757 documents to National Casualty by November 20, 2003. Amended Petition, ¶11.

> Because of their common interests in the resolution of claims under the treaties in dispute, the Panel orders First State to produce any documents requested by . . . National Casualty that relate to the handling of the underlying claims and related litigation at issue in this arbitration. The Panel believes that such production will not waive any privilege claimed against third parties.

Amended Petition, Exhibit 8. The Panel also cautioned that:

> In the event the requested documents are not produced, the panel will, by necessity, be required to draw whatever negative inferences the panel deems appropriate in the presentation of First State's position in this matter."

Id.

On November 20, 2003, First State issued a letter stating that it would not disclose the privileged documents. Petition, ¶12; see also Amended Petition, Exhibit 9. After consultation with counsel, First State stated that it had determined: "that the risk of disclosure of privileged documents . . . far outweighs any risk inherent in the panel drawing a negative inference in the

presentation of First State's position in this matter."

Id.

In response, National Casualty immediately requested that the Panel stay the arbitration proceedings and permit the parties to brief fully the prejudicial impact of First State's refusal. Amended Petition, ¶14; see also Amended Petition, Exhibit 10. National Casualty argued that it would be unfair to allow the proceedings to continue when only First State had access to all of the relevant information. Amended Petition, Exhibit 10.

On December 5, 2003, the Panel denied National Casualty's request for a stay and ordered depositions to begin and the hearing to proceed as originally scheduled. Amended Petition, ¶15; see also Amended Petition, Exhibit 11. In response, on January 26, 2004, National Casualty commenced the present proceedings in this court by filing its initial Petition to Vacate Arbitral Order and Enjoin Further Arbitral Proceedings or, in the Alternative, Remand. Amended Petition, ¶18.

The arbitration hearing occurred as scheduled between February 10 and February 13, 2004. Following the hearing on March 12, 2004, the Panel issued an award in favor of First State.

III. ANALYSIS

The portion of National Casualty's Amended Petition which argues that the Panel lost jurisdiction because First State breached the arbitration agreement by refusing to produce the

8

documents is properly viewed as a complaint and, therefore, the traditional standards for reviewing a 12(b)(6) motion to dismiss apply.

In considering a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Miranda v. Ponce Fed'l Bank, 948 F.2d 41, 44 (1st Cir. 1991)(citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must "neither weigh[] the evidence nor rule[] on the merits because the issue is not whether the plaintiffs will ultimately prevail, but whether they are entitled to offer evidence in support of their claims." Day, 917 F.Supp. at 75. This "highly deferential" standard of review "does not mean, however, that a [c]ourt must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992).

Even under this deferential standard, the facts that National Casualty alleges fail to state a claim upon which relief can be granted. In essence, National Casualty contends that First State's

refusal to produce the withheld documents as ordered by the Panel amounts to a material breach of the arbitration agreement and, therefore, eliminates the Panel's jurisdiction to resolve the dispute. A party's conduct during arbitration, however, does not typically affect the underlying arbitrability of a dispute. Rather, such actions generally present procedural questions for the arbitrator to resolve in the course of arbitration. As the First Circuit has stated, where "parties have clearly agreed to arbitrate the subject of underlying dispute[s] between them . . . it is unlikely that they intended other issues related to the dispute to affect arbitrability." PaineWebber v. Elahi, 87 F.3d 589, 600 (1st Cir. 1996).

In the instant case, because National Casualty and First State entered into a contractual agreement to arbitrate, the court may "presume that other issues relating to the substance of the dispute or the procedures of the arbitration are for the arbitrator." Id. at 599; see also Howsam vs. Dean Witter Reynolds, 537 U.S. 79, 84 ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide."). Thus, First State's refusal to produce withheld documents as ordered by the Panel presents an issue to be resolved in the course of arbitration, and is not a basis upon which National Casualty can escape the Panel's jurisdiction.

In Hooters of America v. Phillips, 173 F.3d 933, 941 (5th Cir.

10

1999), a case on which National Casualty relies, the Fourth Circuit declined to enforce an arbitration agreement on the ground that Hooters, which had sole responsibility for establishing arbitration procedures under an arbitration agreement, had breached the agreement by promulgating rules and procedures "so one sided that their only possible purpose was to undermine the neutrality of the proceedings." Id. at 938. Thus, Hooter's conduct in creating the arbitration procedures, as opposed to its conduct during the arbitration, was the basis for the court's decision not to enforce the arbitration clause. The Fourth Circuit was careful to note that it only reached "the content of the arbitration rules because their promulgation was the duty of one party under the contract." Id.

In the instant case, National Casualty has not alleged that the Panel was unfairly constituted. Instead, it has claimed only that First State willfully refused to comply with the Panel's orders during arbitration. Even if true, such conduct does not provide a basis upon which the court may find that First State breached the arbitration agreement. Hooters breached its duty under the arbitration agreement because its actions "so skewed the [arbitral process] in its favor that [the plaintiff was] denied arbitration in any meaningful sense of the word." Id. In the instant case, First State's conduct occurred in the course of proceedings before a properly constituted Panel that was capable of providing the parties due process. Therefore, discovery issues, and

11

the implications of a failure to obey the Panel's discovery orders, are properly decided by the Panel, rather than the court.[1]

As First State's non-compliance with the Panel's discovery Order does not constitute a breach of the arbitration agreement, National Casualty's Amended Petition does not state a claim upon which the court may find that the Panel lost jurisdiction. Therefore, the court is dismissing the Amended Petition to the extent it seeks to establish that the Panel lacked jurisdiction. National Casualty's objections to First State's conduct should instead have been "made to the arbitrator, subject only to limited post-arbitration review as set forth in Section 10 of the [FAA]." Id.

National Casualty's request that the court vacate the Panel's award in favor of First State pursuant to 9 U.S.C. §§10(a)(1) and (3) is also without merit. "Arbitration awards are subject only to limited review. [Federal courts] will vacate an award only on the narrow grounds specified in the [FAA], 9 U.S.C. § 10, or in other extreme situations, including 'instances where it is clear from the

_____

[1]National Casualty also directed the court's attention to Michigan Mutual Insurance Company v. Unigard Security Insurance Company, 44 F.3d 826, 832 (9th Cir. 1995), which confirmed an arbitrator's decision that had been based, at least in part, upon a party's failure to produce documents. Such judicial deference to the arbitrator's decision, however, reinforces, rather than contradicts, this court's conclusion that it is the arbitrator, and not the district court, that has the authority to decide the effect of First State's failure to produce documents in the instant dispute.

record that the arbitrator recognized the applicable law and then ignored it.'" Morani v. Landenberger, 196 F.3d 9, 11 (1st Cir. 1999) (quoting Advest v. McCarthy, 914 F.2d 6, 9 (1st Cir. 1990)).

9 U.S.C. §6 provides that "[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein provided." Accordingly, the court must review the portion of National Casualty's petition arising under 9 U.S.C. §10(a) as a motion and not as a complaint. See O.R. Securities, Inc. v. Professional Planning Associates, Inc., 857 F.2d 742, 745 (11th Cir. 1992); Productos Mercantiles e Industriales, S.A. v. Faberge, U.S.A., Inc., 23 F.3d 41, 46 (2nd Cir. 1994); Health Services Management Corp. v. Hughes, 975 F.2d 1253, 1258 (7th Cir. 1992).

"The manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceedings affects the burdens of the various parties." O.R. Securities, 857 F.2d at 745. "The rules of notice pleading, Fed. R. Civ. P. 8, do not apply to a proceeding to vacate an arbitration award because relief must be sought in the form of a motion." Productos, 23 F.3d at 46. Therefore, National Casualty has the "burden [of setting] forth sufficient grounds to vacate the arbitration award in its moving papers." O.R. Securities, 857 F.2d at 745.

The First Circuit has repeatedly emphasized that judicial review of arbitration awards is "extremely narrow and exceedingly

13

deferential." <u>Bull HN Information Systems Inc. v. Hutton</u>, 229 F.3d 321, 330 (1st Cir. 2000). Section 10(a) "does not allow courts to roam unbridled in their oversight of arbitral awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specific ways." <u>Advest,</u> 914 F.2d at 8. In reviewing an arbitration award under Section 10(a), "courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts," and "[e]ven where such error is painfully clear, courts are not authorized to reconsider the merits of arbitration awards." <u>Id.</u>

In this case, vacating the arbitrators' award in favor of First State is not warranted. National Casualty contends that the arbitration award should be vacated under §10(a)(3) of the FAA, which allows a federal court to vacate an arbitration award:

> where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

<u>See</u> 9 U.S.C. §10(a)(3). In <u>Hoteles Condado Beach v. Union de Tronquistas Local 901</u>, 763 F.2d 34, 39-40 (1st Cir. 1985), the First Circuit explained the principles by which a court may determine whether an arbitrator's failure to receive evidence constitutes misconduct requiring vacating the award. As a general matter, an "arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties

14

to the dispute an adequate opportunity to present its evidence and arguments." <u>Id.</u> More specifically, "[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring" vacating an arbitrator's award. <u>Id.</u> A federal court may vacate an award "only when the exclusion of the relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing." <u>Id.</u>

The court assumes for the purposes of this decision that the documents withheld by First State were relevant to the arbitration. <u>See</u> <u>Travelers Casualty & Surety Co. v. Gerling Global Reinsurance Corp. of America</u>, 285 F.Supp.2d 200, 211 (D. Conn. 2003); <u>Commercial Union Ins. Co. v. Swiss Reinsurance America Corp.</u>, No. Civ.A. No. 00-12267-DPW, 2003 WL 1786863 at *3-5 (D. Mass. March 31, 2003). However, even assuming that the withheld documents were relevant, National Casualty has not shown that the Panel's decision to conduct the arbitration without requiring their disclosure rendered the proceedings fundamentally unfair.

Essentially, National Casualty has not demonstrated that the withheld documents were necessary to its ability to present its case. In a supplemental affidavit addressing the materiality of the documents, counsel for National Casualty stated that the documents "may well [have] include[d] statements that directly or by fair inference show that the reinsured and/or its lawyers believed that non-product claims are not a single occurrence." <u>See</u> Karekin Aff.,

¶39. The fact that the documents "may well" have been helpful to National Casualty's position does not mean that their disclosure was necessary to a fair hearing.

"[I]n making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts." Tempo Shain Corp. v. Bretek, Inc., 120 F.3d 16, 20 (2nd Cir. 1997) (internal quotation and citation omitted). Indeed, courts have expressly held that the purposes of arbitration - i.e., to provide an efficient and informal alternative to litigation - encourage arbitrators to streamline the arbitrative process by focusing attention on evidence essential to its ultimate holding. See Forsythe International, S.A. v. Gibbs Oil Company of Texas, 915 F.2d 1017, 1022 (5th Cir. 1990); Blue Tee Corp. v. Koehring Company, 754 F.Supp. 26, 31 (S.D.N.Y. 1990); GFI Sec. LLC v. Labandiera, Civ. A. No. 01-00793-JFK, 2002 WL 460059, *7 (S.D.N.Y. March 26, 2002) ("Arbitrators must have enough evidence to make an informed decision, but they need not compromise the speed and efficiency that are the goals of arbitration by allowing the parties to present *every piece* of relevant evidence.").

Vacatur is appropriate where the exclusion of evidence deprives a party of its ability to present a case. Hoteles, 763 F.2d 39. In Hoteles, the First Circuit vacated an arbitration award where the arbitrator refused to consider a transcript of an unavailable witness' prior testimony. Because the transcript was

the only available evidence in support of the party's position, the
arbitrator's refusal to consider it was "so destructive of [its]
right to present its case that it warrant[ed] the setting aside of
the arbitration award." Id. at 40; see also Tempo Shain Corp. v.
Bertek, Inc., 120 F.3d 16 (2nd Cir. 1997 (vacating arbitration
award where panel precluded party from calling only person who
could have testified in support of position); Westvaco Corp. v.
Local 579 United Paperworkers, International Union, Civ. A. No. 90-
30091-F, 1992 WL 121372 (D. Mass. March 5, 1992).

In the instant case, National Casualty has not argued that the
withheld documents were the only evidence in support of its
position. Moreover, the record indicates that National Casualty was
afforded the opportunity to present its case by proffering
available evidence, cross-examining opposing witnesses and,
importantly, calling attention to the significance of First State's
refusal to produce the documents.

The First Circuit has held that "[a]n arbitration award must
be enforced if it is any way plausible." Wonderland Greyhound Park
Inc. v. Autotote Sys., Inc., 274 F.3d 34, 35 (1st Cir. 2002). As
described earlier, when the Panel ordered First State to produce
the documents, it cautioned that a failure to produce would require
it to draw an adverse inference as to their contents. After a four-
day hearing, the Panel issued an award in favor of First State. In
issuing this award, the Panel noted its "disappointment in the

strength of the positions taken by National Casualty and First State regarding the privileged documents." See Amended Petition, Exhibit 13. This indicates that the Panel considered First State's failure to produce the documents in fashioning its award.

In this case, it is plausible that the Panel considered First State's refusal to produce the documents, drew an adverse inference as to their contents, and concluded that First State was nevertheless entitled to an award.

In a supplemental memorandum, National Casualty contends that had the Panel in fact drawn an adverse inference as to the contents of the documents, it could not have ruled in favor of First State. This argument is without merit. The record indicates that an auditor working for National Casualty, Hanna Huryk, reviewed at least some of the withheld documents prior to the arbitration. See Gura Aff., ¶3. Her testimony at the arbitration indicates that her review of the documents did not reveal any communications between First State and its counsel discussing settlement on a multiple-occurrence basis. Id. Based on this testimony, the Panel may have found that the documents, though relevant, were not likely to provide material support for National Casualty's position.

Moreover, even assuming that some of the documents revealed that First State's counsel discussed settling claims on a multiple-occurrence basis, other evidence may have convinced the Panel that First State actually settled the claims in accordance with the

Treaties. See Chiarella v. Viscount Industries Co., Ltd., Civ. A. No. 02-9310-RPP, 1993 WL 497967, *4 (S.D.N.Y. Dec. 1, 1993) (confirming an arbitral award even though an arbitrator failed to hear relevant evidence because the arbitrator may have based his finding on other evidence.). If, after considering the evidence and arguments presented to it, the Panel found that it did not need to review the withheld documents, it was entitled to issue an award without requiring their production. Such procedural informality is inherent in the nature of arbitration proceeding and, without more, does not amount to misconduct. See Forsythe, 915 F.2d at 1022. Therefore, because National Casualty has failed to demonstrate that the arbitration was fundamentally unfair, the court is denying its motion for vacatur under 9 U.S.C. §10(a)(3).

Vacating the award is also not warranted under 9 U.S.C. §10(a)(1), for essentially the same reasons. Section 10(a)(1) permits vacating an arbitration award "where the award was procured by corruption, fraud, or undue means." See 9 U.S.C. §10(a)(1). National Casualty argues that First State's deliberate disregard of the Panel's discovery order constitutes undue means. In the circumstances of this case, at least, this contention is not correct.

The text of §10(a)(1) states that vacatur is appropriate when an award is procured by undue means. Id. "Thus, the statute requires a showing that the undue means caused the award to be

19

given." <u>A.G. Edwards & Sons, Inc. v. McGollough</u>, 967 F.2d 1401, 1404 (9th Cir. 1992); <u>see also</u> <u>Forsythe</u>, 915 F.2d 1017 (noting that the statutory language requires a nexus between the wrongful conduct and the basis for the arbitrator's decision).

As explained earlier, in this case National Casualty has not demonstrated that First State's failure to produce the documents, and the Panel's subsequent decision to conduct the arbitration in their absence, resulted in the arbitration award. In other words, National Casualty has failed to show prejudice, or that the award would not have issued to First State had the Panel required the documents to be produced. Simply suggesting that the documents may be relevant, and may possibly support National Casualty's position, is not a sufficient showing to justify vacatur. <u>See</u> <u>PaineWebber Group, Inc. v. Zinsmeyer Trust P'ship</u>, 187 F.3d 988, 995 (8th Cir. 1999) (confirming an arbitrator's award where the moving party had not shown that the production of privileged documents would have altered the final result); <u>see also</u> <u>Wonderland</u>, 274 F.3d at 35.

IV.  FIRST STATE'S MOTION FOR SANCTIONS

The court is denying First State's motion for sanctions, both under Rule 11 and 28 U.S.C. §1927. "The objective of Rule 11 is to deter dilatory and abusive tactics in litigation, and to streamline the litigation process by lessening frivolous claims or defenses." <u>Argentieri v. Fisher Landscapes, Inc.</u>, 15 F.Supp.2d 55, 63 (D. Mass. 1998). As a general matter, "Rule 11 calls for the imposition

of sanctions on a party for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." Id.

Whether a litigant has violated Rule 11 "depends on the objective reasonableness of the litigant's conduct under the totality of the circumstances." Lichenstein v. Consolidated Servs. Group, Inc., 173 F.3d 17, 23 (1st Cir. 1999); see also Hochen v. Bobst Group, Inc., 198 F.R.D. 11, 16. (D. Mass. 2000) ("A court must use an objective standard of 'reasonableness under the circumstances' in determining whether there has been compliance with Rule 11."). Similarly, under 28 U.S.C §1927, an attorney may be required to satisfy excess costs, expenses and fees occasioned by his conduct, where such conduct unreasonably and vexatiously multiplies the costs of litigation. See 28 U.S.C §1927. "Behavior is 'vexatious' when it is harassing or annoying, regardless of whether it is intended to be so. Thus, if an attorney's conduct in multiplying proceedings is unreasonable and harassing or annoying, sanctions may be imposed under §1927." Cruz v. Savage, 896 F.2d 626, 631-32 (1st Cir. 1990).

In this case, although the court did not consider National Casualty's arguments to be persuasive, National Casualty cited case law which arguably gave its position legal foundation. See e.g., Hooters, 173 F.3d at 941. The simple fact that a claim is rejected by a court is not a sufficient basis for sanctions. See Protective

21

<u>Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.</u>, 171 F.3d 52, 57 (1st Cir. 1999) ("Rule 11 does not restrict counsel to citing cases directly on point"). Accordingly, the court finds that National Casualty's conduct in filing the instant lawsuit was neither objectively unreasonable, nor vexations and harassing. Therefore, First State's motion for sanctions is being denied.

V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The portion of National Casualty Company's ("National Casualty") Amended Petition to Vacate an Arbitral Order and for Other Relief (Docket No. 13) which arises under §10 of the Federal Arbitration Act, 9 U.S.C. §§10(a)(1) and (3), is DENIED. 2. First State Insurance Group's ("First State") Motion to Dismiss National Casualty's Amended Petition (Docket No. 31) is ALLOWED as to the remainder of National Casualty's Amended Petition.

3. First State's Motion to Confirm the Final Arbitration Award Dated March 12, 2004 (Docket No. 33) is ALLOWED.

4. First State's Motion for Sanctions (Docket No. 17) is DENIED.


                          /s/ MARK L. WOLF
                          UNITED STATES DISTRICT JUDGE